658 F.2d 903
 BANCO NACIONAL de CUBA, Plaintiff-Appellant-Cross-Appellee,
v.
CHEMICAL BANK NEW YORK TRUST COMPANY,
Defendant-Appellee-Cross-Appellant.
BANCO NACIONAL de CUBA, Plaintiff-Appellant-Cross-Appellee,
v.
MANUFACTURERS TRUST COMPANY, Defendant-Appellee-Cross-Appellant.
BANCO NACIONAL de CUBA, Plaintiff-Appellant-Cross-Appellee,
v.
IRVING TRUST COMPANY, Defendant-Appellee-Cross-Appellant.
 Nos. 52 to 54 and 119 to 121.
Dockets 80-7209, 80-7249, 80-7215, 80-7255, 80-7205 and 80-7247.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 26, 1981.
Decided Aug. 4, 1981.
 
 Michael Krinsky, New York City (Victor Rabinowitz, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, New York City, on the brief) for plaintiff-appellant-cross-appellee.
 Henry Landau, New York City (James J. Haugh, John J. Kerr, Jr., Wendy L. Miller, Simpson, Thacher & Bartlett, New York City, on the brief), for defendant-appellee-cross-appellant Manufacturers Hanover Trust Co.
 Richard B. Lind, New York City (Ralph L. McAfee, Richard S. Simmons, Cravath, Swaine & Moore, New York City, on the brief), for defendant-appellee-cross-appellant Chemical Bank.
 Winthrop, Stimson, Putnam & Roberts, New York City (William W. Karatz, Alice M. Clark, Rebecca S. Rudnick, New York City, on the brief), for defendant-appellee-cross-appellant Irving Trust Co.
 Before LUMBARD, VAN GRAAFEILAND, and KEARSE, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 These three unconsolidated appeals, which were briefed and argued together, arise out of the expropriation in 1960 by the Republic of Cuba of a company called Cuban Electric Company, which at the time of the expropriation had outstanding balances on loans from defendants Chemical Bank New York Trust Company ("Chemical"), Manufacturers Trust Company ("Manufacturers"), and Irving Trust Company ("Irving"). The present actions were instituted by Banco Nacional de Cuba ("Banco Nacional"), which sought to recover in its own right a deposit withheld by Chemical, and sought to recover as successor in interest to certain banks nationalized in Cuba in 1960 ("the Private Banks") amounts deposited with each of the defendants by the Private Banks prior to their nationalization. Each of the defendants counterclaimed, seeking dismissal of the complaints, asserting that the debt owed it by Cuban Electric exceeded the amount of Banco Nacional's claims. The United States District Court for the Southern District of New York, Charles L. Brieant, Jr., Judge, dismissed Banco Nacional's claims as successor to the Private Banks on the ground that the expropriations in Cuba were ineffective to transfer title to assets located in the United States. Consequently the court also dismissed the counterclaims of Manufacturers and Irving as moot. The court allowed the claim of Banco Nacional in its own right against Chemical, but allowed Chemical's counterclaim to the extent of Banco Nacional's claim, and hence entered judgment dismissing the claim against Chemical as well.
 
 
 2
 For the reasons below, we vacate the judgments and remand for further proceedings.
 
 I. THE FACTS
 
 3
 The background of the Cuban revolution has been the subject of extensive discussion in the courts, and we assume familiarity with our decisions today in Banco Para el Comercio Exterior de Cuba v. First National City Bank, No. 80-7297, 658 F.2d 913 (2nd Cir.), ("Citibank"); and Banco Nacional de Cuba v. Chase Manhattan Bank, Nos. 80-7375, -7377, 658 F.2d 875 (2nd Cir.) ("Chase"), and with the cases cited in the margin.[1]
 
 A. Banco Nacional and its Claims
 
 4
 As set forth in greater detail in our opinions in Chase, supra, and Citibank, supra, Banco Nacional is the central bank of Cuba and it played a leading role in the expropriations of private banks in Cuba. In September 1960, pursuant to Resolution No. 2 under Law No. 851, Banco Nacional acted as the alter ego of the Cuban government in taking over the Cuban branches of three American Banks: First National City Bank ("Citibank"), Chase Manhattan Bank ("Chase"), and First National Bank of Boston ("Boston"). See Banco Nacional de Cuba v. First National City Bank, 478 F.2d 191, 193-94 (2d Cir. 1973).[2] On October 13, 1960, pursuant to Law No. 891, the government of Cuba nationalized the Cuban assets and property of virtually all private banks not previously nationalized. Banco Nacional was placed in charge of the nationalized banks:
 
 
 5
 Article 2: As per the preceding article, all private Cuban banks are nationalized by forcible expropriation and are therefore awarded to the government of Cuba; this includes deposit and credit banks, mortgage banks, development banks, and all their assets, rights and shares of such banks in Cuba, and their bank accounts and deposits abroad.
 
 
 6
 The reasons given in the preamble to this law show this action to be in the public interest and for the social and National well-being and demonstrate the need for this expropriation.
 
 
 7
 Article 3: The nationalization and consequent award to the government of Cuba ordered in the preceding article is to be carried out through Banco Nacional de Cuba, as autonomous body in charge of the banking function of the state. Therefore, Banco Nacional de Cuba is declared the legal successor, substitute in lieu and stead of the artificial persons or firms mentioned in article 2 of this law, with regard to the assets, rights, and shares mentioned; to Banco Nac. de Cuba are transferred also all assets and liabilities of the banking institutions affected by this law.
 
 
 8
 Law No. 891.
 
 
 9
 On February 23, 1961, further reorganization of the Cuban banking industry was ordered. Law No. 930 reorganized Banco Nacional, and Article 6 of that Law provided as follows:
 
 
 10
 Article 6. The capital of the National Bank of Cuba shall be ONE HUNDRED MILLIONS OF PESOS ($100,000,000.00), which the State contributes out of the capital accounts, contributions, contingency reserves and profits of the institutions and official banking entities and of the banks nationalized by Resolution No. 2, issued by the President of the Republic and the Prime Minister of the Government on September 17, 1960, in pursuance of Law No. 851, of July 6 of the same year, as well as of the capital accounts, contributions, contingency reserves and earnings of the banking institutions which have also passed, for any reason, to the possession, administration or liquidation by the National Bank of Cuba.
 
 
 11
 The excess left over and above the capitals assigned, added to the balances of the contingency reserve accounts of the banks nationalized by Law No. 891, of October 13, 1960, excepting those pertaining to the banks referred to in the Second of its Final Provisions shall be used to set up the Contingency Reserve Accounts of the National Bank of Cuba.
 
 
 12
 The Private Banks as whose successor Banco Nacional sues here were nationalized pursuant to Law No. 891. They were Cuban corporations, domiciled in Cuba, whose shareholders apparently were Cuban. Banco Nacional commenced suit on February 6, 1961. It seeks to recover $428,639 from Manufacturers, $58,460 from Irving, and $238,368 from Chemical as amounts on deposits in the accounts of various of the Private Banks with the respective defendants. In addition, Banco Nacional asserts a claim against Chemical for $84,717,[3] to recover an amount deposited by Banco Nacional itself.
 
 B. Cuban Electric and the Counterclaims
 
 13
 Cuban Electric was a United States corporation, organized under Florida law and controlled by United States nationals. It operated an electric utility in Cuba, and substantially all of its assets were located there. In 1958 and 1959 each of the defendants participated in a series of loans to Cuban Electric, the balances of which were due to be paid, with interest, not later than November 23, 1959. The principal amounts to which the defendants were entitled were: Manufacturers $1,100,000, Irving $750,000, and Chemical $750,000. Cuban Electric did not repay the loans on the due date or thereafter.
 
 
 14
 In 1960, following the deterioration of relations between Cuba and the United States, see generally Chase, supra at Part I.A., the Cuban assets of Cuban Electric, as well as those of many other American companies, were nationalized and expropriated under Resolution No. 1, dated August 6, 1960, pursuant to Law No. 851 of July 6, 1960. Resolution No. 1 stated in part as follows:
 
 WE RESOLVE:
 
 15
 First: There is hereby ordered the nationalization through compulsory expropriation and, consequently, the appropriation in favor of the Cuban State, with absolute right of ownership, of all properties and entities in the national territory and the rights and interests attaching to the operation of said properties and entities, belonging to juridical persons who are nationals of the United States of America or who operate entities in which the majority interest is in the hands of Americans, as follows:
 
 
 16
 1. Compania Cubana de Electricidad (Cuban Electric).
 
 
 17
 Second: Consequently, it is hereby declared that the Cuban State is subrogated in the place and stead of the juridical persons listed in the preceding paragraph with respect to the properties, rights and interests mentioned as well as the assets and liabilities comprising the capital of the entities referred to.
 
 
 18
 Third: It is hereby declared that these compulsory expropriations are effected because of necessity and public utility and in the national interest as set forth in the "Whereas" clauses of this Resolution.
 
 
 19
 Defendants contend that by these provisions Cuba assumed the obligation to repay Cuban Electric's overdue loans. None of the loans was repaid.
 
 
 20
 Two months later, following the nationalization of the Private Banks, each defendant looked to the accounts of the Private Banks as Cuban assets against which the unpaid loans to Cuban Electric could be offset, and accordingly refused to release those accounts. Their counterclaims seek the dismissal of Banco Nacional's suit to recover the withheld moneys, on the ground that their losses resulting from the expropriation of Cuban Electric and the Cuban Government's failure to pay Cuban Electric's debts, exceed the value of the accounts.[4]
 
 C. Decision of the District Court
 
 21
 All parties moved for summary judgment before Judge Frederick Van Pelt Bryan, to whom these cases were originally assigned. When Judge Bryan died without having rendered a decision, the cases were reassigned to Judge Brieant. Finding no genuine issues as to any material fact, Judge Brieant ruled that Banco Nacional was not entitled to assert the claims of the Cuban Private Banks because the assets sued on were located in the United States, and the Cuban expropriations were not to be given extraterritorial effect. The court found this result compelled by the rulings in Menendez v. Saks & Co., 485 F.2d 1355 (2d Cir. 1973), and Republic of Iraq v. First National City Bank, 353 F.2d 47 (2d Cir. 1965), cert. denied, 382 U.S. 1027, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966). Accordingly, all of Banco Nacional's claims as successor to the Private Banks were dismissed on their merits, and the counterclaims of Manufacturers and Irving were dismissed as moot. The court allowed Banco Nacional's claim in its own right, but also allowed Chemical's counterclaim to the extent of the value of Banco Nacional's claim.
 
 
 22
 The court indicated that had it not felt constrained by the Republic of Iraq and Menendez cases, it would have allowed Banco Nacional to sue as successor to the Private Banks, since no conflicting claims to those accounts had been forthcoming, and thence would have allowed the defendants to assert their offsetting counterclaims.
 
 D. Issues on Appeal
 
 23
 These appeals come to us in a somewhat unusual posture, as the defendants, who prevailed below, have cross-appealed, joining Banco Nacional in urging the reversal of the district court's refusal to allow Banco Nacional to sue as successor to the Private Banks.
 
 
 24
 Banco Nacional, in addition to seeking reversal of the dismissal of its claims as successor, seeks reversal of the judgment allowing Chemical's counterclaim, on the grounds that it is a claim against the Republic of Cuba not properly assertable against Banco Nacional, that the claim is nonjusticiable under the act of state doctrine, and that the acts of the Cuban government with respect to Cuban Electric did not violate defendants' rights under international law.
 
 
 25
 Defendants, having joined in urging reversal of the district court's dismissal of Banco Nacional's claims as successor, also urge that their offsetting counterclaims be allowed.
 
 
 26
 We agree with the parties that Banco Nacional's claims as successor to the Private Banks should not have been dismissed, and that the defendants' counterclaims are therefore not moot. Further, we agree with Banco Nacional that Chemical's counterclaim is not assertible against Banco Nacional to offset its own claim; but we conclude that the counterclaims of all defendants, assuming justiciability, are properly assertible as offsets against Banco Nacional's claims as successor to the Private Banks. However, we find an insufficient basis in the record before us to determine the merits and justiciability of the counterclaims, and hence remand those questions to the district court for appropriate proceedings.
 
 II. BANCO NACIONAL AS SUCCESSOR IN INTEREST
 
 27
 As a general matter, the act of state doctrine bars the courts from examining the validity of a taking of property by a foreign sovereign within its own territory. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); see Chase, supra, Part II.A. The act of state doctrine does not, however, bar inquiry by the courts into the validity of extraterritorial takings. Thus, in Republic of Iraq v. First National City Bank, supra, we stated as follows:
 
 
 28
 Under the traditional application of the act of state doctrine, the principle of judicial refusal of examination applies only to a taking by a foreign sovereign of property within its own territory...; when property confiscated is within the United States at the time of the attempted confiscation, our courts will give effect to acts of state "only if they are consistent with the policy and law of the United States."
 
 
 29
 353 F.2d at 51 (citations omitted). The effect of a foreign state's attempt to expropriate property located in the United States has been found to violate United States law or policy when the prior owner of the property has not been compensated and he or his successor protests the taking or resists its judicial enforcement. See, e. g., Republic of Iraq, supra; Menendez v. Saks & Co., supra; United Bank Ltd. v. Cosmic International Inc., 542 F.2d 868 (2d Cir. 1976).
 
 
 30
 On the other hand, when enforcement has promised to further, rather than violate, the policy aims of the United States, our courts have given extraterritorial effect to foreign expropriations. United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134 (1937), for example, involved the nationalization in 1918 by the Soviet government of the property of a Russian corporation that had deposited money with a New York banker. In 1933, as part of a general attempt to resolve differences between itself and the United States, the Soviet government assigned to the United States all claims that it had against American nationals. Thereafter the United States sought to collect on such claims and thereby amass a fund from which American nationals having valid claims against the Soviet government could be compensated, and it sued to recover the deposit from the banker. Recognizing that the United States had no greater right to the deposit than the Soviet government could convey, the Supreme Court held it appropriate to give effect to the Soviet expropriation of the New York account, because to do so would further, rather than violate, United States policy as it had evolved.
 
 
 31
 In the present case, there appears to be no reason at this late time to invoke the act of state doctrine to bar the court from recognizing Banco Nacional's right to sue as successor to the Private Banks. While United States law of course does not approve the taking of private property without compensation, the former owners of the Private Banks have lodged no protest, either by bringing suit to recover their United States property, or by seeking to intervene in Banco Nacional's suits. In the twenty years during which these suits have been pending, the former owners have not asserted any conflicting claim. Thus we cannot say that the effect in this case of recognizing the Cuban nationalization of the Private Banks would violate United States policy.
 
 
 32
 To the contrary, we conclude that allowing Banco Nacional to sue as successor here will further the goals of the United States, because it will assist in providing funds in the United States from which American nationals who have valid claims against the government of Cuba may be compensated, at least in part, for their claims. Thus, if the defendants here have valid, justiciable claims against Cuba they may set off those claims against the amounts that Banco Nacional would otherwise be awarded as successor. Or, if such counterclaims are impermissible or unmeritorious, the amount awarded to Banco Nacional as successor will, by law, be required to be paid into a frozen account that may eventually be distributed by the United States Foreign Claims Settlement Commission to American nationals it has determined have valid claims against Cuba. 22 U.S.C. §§ 1643-43k (1976); 31 C.F.R. Part 515 (1980). See Chase, supra, Part III. Were we not to recognize Banco Nacional's right to sue in the absence of any conflicting claims, the result apparently would be to cause the deposits to escheat to the State of New York, a result that cannot be said to further the established national policy.[5]
 
 
 33
 Accordingly, we conclude that United States policy will be furthered rather than violated by allowing Banco Nacional to sue as successor to the Private Banks, and we reverse the dismissal of its claims in that capacity.
 
 III. VALIDITY OF THE COUNTERCLAIMS
 
 34
 We turn next to Banco Nacional's contention that Chemical should not have been allowed to set off its counterclaim against Banco Nacional's own claim. And having reinstated Banco Nacional's claims as successor, so that the dismissals of the counterclaims of Manufacturers and Irving cannot be sustained on grounds of mootness, we expand our discussion to treat as well the possibility of offsets by all three defendants against Banco Nacional's claims as successor.A. Banco Nacional as the Proper Counterclaim Defendant
 
 
 35
 Banco Nacional contends that defendants' counterclaims may not properly be asserted against it because those counterclaims are based on the Cuban government's expropriation of the assets of Cuban Electric Company, an expropriation in which Banco Nacional had no role. Thus, it argues, Banco Nacional is not an alter ego of the Cuban government for purposes of the present counterclaims. We agree with this conclusion insofar as Banco Nacional seeks to recover its own deposits from Chemical, but we disagree insofar as it seeks to recover the accounts of the Private Banks.
 
 1. Banco Nacional in its Own Right
 
 36
 It is clear that the nationalization of the assets of Cuban Electric was an act of the Cuban government. Resolution No. 1 of Law No. 851 declared the Cuban State the owner of the expropriated property. Further, that Resolution designated the National Institute of Agrarian Reform as the manager of those properties. There was no mention of Banco Nacional, and so far as appears, Banco Nacional did not participate in that expropriation. As to Cuban Electric, therefore, Banco Nacional had no role similar to its integral part in the nationalization of banks pursuant to Resolution No. 2 of Law No. 851, see note 2 supra, and accompanying text, described in greater detail in Banco Nacional de Cuba v. First National City Bank, supra, and in our decisions today in Chase, supra, and Citibank, supra. Resolution No. 1 thus does not provide a basis for imputing to Banco Nacional the acts of the Cuban government in expropriating the property of Cuban Electric.
 
 
 37
 Moreover, with respect to Banco Nacional's claim to recover its own accounts from Chemical, there is no basis for imputing to the Cuban government the ownership that Banco Nacional claims for itself. Banco Nacional was formed in 1948 to engage in domestic and international banking. It apparently opened many accounts with foreign banks, and there is no suggestion that its account with Chemical was owned, or had been owned, by the Cuban government. As discussed more fully in Citibank, supra, when a state has created a separate and distinct juridical entity to engage in commercial activities, we will not ordinarily find the state and the instrumentality alter egos with respect to acts done by the instrumentality in the normal course of its commercial activities. We see no reason here to view Banco Nacional and the Cuban government as alter egos with respect to Banco Nacional's own commercial deposits.
 
 
 38
 In sum, therefore, there are no grounds for equating Banco Nacional with the Cuban government either on Banco Nacional's own claim or on Chemical's counterclaim. We conclude that Chemical's counterclaim with respect to the Cuban government's expropriation of Cuban Electric may not be asserted to offset Banco Nacional's claim in its own right.
 
 2. Banco Nacional as Successor
 
 39
 We reach the opposite conclusion with respect to Banco Nacional's claims as successor to the Private Banks. Given the nature and origin of its claims as successor, we find that Banco Nacional must be viewed as pursuing those claims on behalf of the Cuban government.
 
 
 40
 Each of the complaints filed here alleged that Banco Nacional had the right to sue pursuant to Law No. 891, which expropriated the Private Banks. That Law, however, quoted in pertinent part in Part I.A., supra, "awarded ("all private Cuban banks") to the government of Cuba." It provided that the nationalization and consequent "award to the government of Cuba" would be "carried out through Banco Nacional." (Emphasis added.) Thus the Law vested ownership of the expropriated banks in the Cuban government, and by declaring Banco Nacional the legal successor to the private banks, made Banco Nacional a tribute or agent for the Cuban government. Confirmation that Law No. 891 gave ownership of the assets of the private banks to the Cuban government itself, rather than to Banco Nacional, is found in Law No. 930 which reveals that the government did not convey ownership of those assets to Banco Nacional until several months after the nationalizations under Law No. 891. Law No. 930 stated that "the State contributes" to the capital of the newly reorganized Banco Nacional "the capital accounts, contributions, contingency reserves and earnings of the banking institutions which have ... passed, for any reason, to the possession, administration or liquidation" of Banco Nacional.
 
 
 41
 Thus, under Law No. 891, ownership of the New York accounts of the Private Banks passed to the Cuban government, and title was given to Banco Nacional as its agent. We conclude that the Cuban government is the real party in interest on these claims, and that counterclaims for acts of the Cuban government may properly be asserted.
 
 
 42
 B. Justiciability of Counterclaims against Banco Nacional as Successor
 
 
 43
 We have dealt at some length today with the question of justiciability, in our opinion in Chase, supra. Briefly, we there held, on the basis of the Supreme Court's decision in First National City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972), that a counterclaim against a foreign sovereign plaintiff is justiciable if (1) the Executive Branch has provided a "Bernstein" letter[6] advising the courts that it believes the act of state doctrine need not be applied, (2) there is no showing that an adjudication of the counterclaim will conflict with delicate foreign relations, and (3) the counterclaim is asserted only as a setoff and does not seek affirmative relief. We are unable to determine on the record before us whether the first precondition is met.
 
 
 44
 In the present case, unlike Chase, the record does not contain a recent statement of the views of the State Department. Banco Nacional states in its brief on appeal that the Executive Branch has not expressed any views. The district judge here did not expressly mention the need for or the presence of a Bernstein letter; but he did state that if the successor claims were allowable, the counterclaims would be actionable by way of setoff for reasons "fully discussed in the Chase-Citibank decision,[7] which is indistinguishable." Opinion at 14. In its Chase-Citibank opinion, the district court had relied on the 1970 Bernstein letter that was before the courts in First National City Bank v. Banco Nacional de Cuba, supra,[8] in which the State Department had espoused adjudication of counterclaims or setoffs against the Cuban government "in this or like cases" stating, in part, as follows:
 
 
 45
 "Recent events, in our view, make appropriate a determination by the Department of State that the act of state doctrine need not be applied when it is raised to bar adjudication of a counterclaim or setoff when (a) the foreign state's claim arises from a relationship between the parties existing when the act of state occurred; (b) the amount of the relief to be granted is limited to the amount of the foreign state's claim; and (c) the foreign policy interests of the United States do not require application of the doctrine.
 
 
 46
 "In this case, the Cuban government's claim arose from a banking relationship with the defendant existing at the time the act of state expropriation of defendant's Cuban property occurred, and defendant's counterclaim is limited to the amount of the Cuban government's claim. We find, moreover, that the foreign policy interests of the United States do not require the application of the act of state doctrine to bar adjudication of the validity of a defendant's counterclaim or set-off against the Government of Cuba in these circumstances.
 
 
 47
 "The Department of State believes that the act of state doctrine should not be applied to bar consideration of a defendant's counterclaim or set-off against the Government of Cuba in this or like cases."
 
 
 48
 Id. 406 U.S. at 781, 92 S.Ct. at 1820 (Brennan, J., dissenting).
 
 
 49
 We find several differences between the present cases and the Chase and Citibank cases. First, unlike Chase and Citibank, the claims pressed here by Banco Nacional as successor came to Banco Nacional as fruit of the Cuban expropriations; they are not claims developed in the ordinary course of its commercial activities, and they did not belong to Banco Nacional at the time of the expropriation of Cuban Electric. More important is the difference in the nature of the counterclaims. The Chase and Citibank cases involved counterclaims for expropriation of those defendants' own property. The present counterclaims are based on expropriation not of defendants' property but of the property of a corporation that simply owed money to the defendants; the defendants' legal premise is not that the expropriation violated their rights under international law, but that there was a breach of an agreement by the Cuban government to pay assumed liabilities. We are not sure that the Executive Branch would consider these cases to be "like" Chase and Citibank, and we were not entirely enlightened by the following colloquy with Manufacturers' counsel at the oral argument of these appeals:
 
 
 50
 Mr. Landau: * * *
 
 
 51
 Both I and Mr. Rabinowitz have written to the State Department at the request of the late Judge Bryan giving the whole story as to what these facts are, what is involved in the case and asking for their view.
 
 
 52
 We did receive a letter. However, we didn't make it part of the record simply because they said they did not see the question of an Act of State being involved and, therefore, they didn't ask for it so there was no reason for us to go back having received that reply.
 
 
 53
 Judge Van Graafeiland: That is the letter that is in the appendix?
 
 
 54
 Mr. Landau: No, it isn't. We didn't include it because it was negative.
 
 
 55
 In the absence of a clearer record, or at least of findings as to the views of the Executive Branch, we cannot determine whether the preconditions to justiciability of the present defendants' counterclaims have been satisfied. Accordingly, we remand these cases for further consideration of this question.
 
 C. The Merits of the Counterclaims
 
 56
 Finally, even were we to assume justiciability, we would lack an adequate basis for reviewing the merits of the counterclaims. In ruling on the parties' summary judgment motions, the district judge's dismissal of the successor claims made it unnecessary for him to reach the merits of the counterclaims. The court did state that if Banco Nacional's claims as successor were allowed, it "would appear fair and reasonable" to him to allow setoff by these counterclaims. To the extent that this constituted a hypothetical decision on the merits, it is unsupported by any findings of fact or conclusions of law.[9] And we note that Banco Nacional, in opposing the defendants' motions for summary judgment, contested the fundamental factual premise of the counterclaims, i. e., that the Cuban government actually assumed the liabilities of Cuban Electric. This issue alone implicates questions of intent, which are normally inappropriate for disposition by summary judgment, of the proper interpretation and the proper standard of interpretation of Cuba's own laws, and of a possible wholesale repudiation of debt such as to constitute an act of state rather than mere commercial breaches of individual contracts. See Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 695, 96 S.Ct. 1854, 1861, 48 L.Ed.2d 301 (1976).
 
 
 57
 If the district judge on remand should find that the Executive Branch has made the kind of statement necessary to support a conclusion, consistent with our ruling in Chase, that the present counterclaims are justiciable, he will have to explore the above questions on the merits.
 
 CONCLUSION
 
 58
 The judgments of the district court are vacated, and the cases are remanded for further proceedings not inconsistent with the opinion.
 
 
 
 [1]
 See, e. g., Banco Nacional de Cuba v. First National City Bank, 270 F.Supp. 1004 (S.D.N.Y.1967), rev'd 431 F.2d 394 (2d Cir. 1970), vacated and remanded, 400 U.S. 1019, 91 S.Ct. 581, 27 L.Ed.2d 630 (1971), on remand, 442 F.2d 530 (2d Cir. 1971), rev'd, 406 U.S. 759, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972), on remand, 478 F.2d 191 (2d Cir. 1973); Banco Nacional de Cuba v. Sabbatino, 193 F.Supp. 375 (S.D.N.Y.1961), aff'd, 307 F.2d 845 (2d Cir. 1962), rev'd 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), on remand, sub nom. Banco Nacional de Cuba v. Farr, 243 F.Supp. 957 and 272 F.Supp. 836 (S.D.N.Y.1965), aff'd, 383 F.2d 166 (2d Cir. 1967), cert. denied, 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1968)
 
 
 [2]
 On September 16, 1960, Banco Nacional ordered the Cuban militia to occupy all of Citibank's Cuban branches, and proceeded to take over the operations of those branches. See Banco Nacional de Cuba v. First National City Bank, supra
 
 
 [3]
 A lower amount was demanded in the complaint but this was later corrected by affidavit, and the parties have agreed that the correct amount is that stated in the text
 
 
 [4]
 Consistent with the rule in National City Bank v. Republic of China, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389 (1955), defendants do not seek an affirmative recovery on their counterclaims but concede that the counterclaims may result only in an offset against a recovery by Banco Nacional
 
 
 [5]
 Under New York law, bank deposits that remain unclaimed for five years, with certain specific exceptions not relevant here, are "abandoned property". If the property remains unclaimed after the proper reports are made and notice given, the sums become payable to the State Comptroller. N.Y.Aband.Prop. Law §§ 300-03 (McKinney 1980 Supp.)
 
 
 [6]
 So called after this Court's decision in Bernstein v. N.V. Nederlandsche-Amerikaansche Stoomvaart-Maatschappij, 210 F.2d 375 (2d Cir. 1954)
 
 
 [7]
 Judge Brieant rendered his decisions in the Chase and Citibank cases in a single opinion, reported at 505 F.Supp. 412
 
 
 [8]
 After Judge Brieant had rendered his decision in Chase and Citibank, the State Department sent another letter confirming its position that such counterclaims against the Cuban government should be entertained, and stating its view that the Chase and Citibank cases were " 'like cases' to" First National City Bank v. Banco Nacional de Cuba, supra
 
 
 [9]
 Defendants state that "(t)he Court below specifically found that when Cuba expropriated the assets and assumed the liabilities of Cuban Electric under Resolution No. 1, it assumed the debts of Cuban Electric to the" defendants. (Brief on Appeal at 19, citing Opinion at 3-4.) This seems to be a rather free reading of that portion of the opinion, which in fact stated as follows:
 The Cuban Electric Company, a public utility controlled by American investors, was expropriated on August 6, 1960 by Resolution No. 1 of Law No. 851, along with other American enterprises in Cuba. This was done by the Cuban Government in retaliation for conduct of the American Government, more fully described in the Chase-Citibank decision. The Government of Cuba became the successor in interest of the Cuban Electric Company as a going concern, and assumed all its assets and properties.