**BANCO NACIONAL de CUBA,**
**Plaintiff-Appellant,**
**Cross-Appellee,**

v.

**CHEMICAL BANK NEW YORK TRUST COMPANY, Defendant-Appellee, Cross-Appellant.**

Docket Nos. 80–7209, 80–7249.

United States Court of Appeals,
Second Circuit.

Submitted May 24, 1985.
Decided Feb. 3, 1986.

Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C. (Michael Krinsky, New York City), for Plaintiff-Appellant, Cross-Appellee.

Richard B. Lind, New York City (Ralph L. McAfee, Richard S. Simmons, Blake A. Bell, Cravath, Swaine & Moore, New York City), for Defendant-Appellee, Cross-Appellant.

Before LUMBARD, VAN GRAAFEILAND, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Chemical Bank New York Trust Company ("Chemical") has moved for modification of the decision of this Court in *Banco Nacional de Cuba v. Chemical Bank New York Trust Co.*, 658 F.2d 903 (2d Cir.1981) (*"Chemical"*), in order to reinstate its counterclaim against plaintiff Banco Nacional de Cuba ("Banco Nacional") in light of the decision of the United States Supreme Court in *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) (*"Bancec"*), reversing the decision of this Court in *Banco Para el Comercio Exterior de Cuba v. First National City Bank*, 658 F.2d 913 (2d Cir.1981) (*"Citibank"*). We conclude that *Bancec* does not require modification of the decision in *Chemical*, and we deny Chemical's motion.

## BACKGROUND

We assume familiarity with our decision in *Chemical* and with the events there described. Briefly, in 1960, the Republic of Cuba expropriated the assets of the Cuban Electric Company ("Cuban Electric"), which then had an outstanding balance on a loan from Chemical. The present action was commenced in 1961 by Banco Nacional for, to the extent pertinent here, recovery of funds it had previously deposited with Chemical. Chemical counterclaimed, seeking to set off against Banco Nacional's claim the debt owed Chemical by Cuban Electric, contending that the Cuban government had assumed the debts of Cuban Electric and that Banco Nacional was the alter ego of the Cuban government. Although Chemical prevailed on this theory in the district court, we reversed on appeal.

We ruled that Chemical was not entitled to offset its Cuban Electric debt claim against Banco Nacional's claim to recover its deposited funds because there was neither a basis for imputing to Banco Nacional the acts of the Cuban government in expropriating Cuban Electric nor a basis for imputing to the Cuban government a right to the funds deposited by Banco Nacional.

We noted that the resolution providing for the nationalization of Cuban Electric by the Cuban government made no mention of Banco Nacional and that apparently Banco Nacional did not participate in that expropriation. We noted that Banco Nacional had been formed in 1948 to engage in domestic and international banking, and since that time apparently had opened many accounts with foreign banks. Banco Nacional's account with Chemical apparently had never been owned by the Cuban government. In ruling that these facts precluded the assertion of Chemical's counterclaim against Banco Nacional, we stated the general principle, which we noted was explored in greater detail in our same-day decision in *Citibank*, that

> when a state has created a separate and distinct juridical entity to engage in commercial activities, we will not ordinarily find the state and the instrumentality alter egos with respect to acts done by the instrumentality in the normal course of its commercial activities.

*Chemical*, 658 F.2d at 910.

In *Citibank*, we disallowed the attempt of defendant First National City Bank ("Citibank"), whose Cuban branches had been expropriated by the Cuban government, to set off its claim for compensation for that expropriation against the claim of plaintiff Banco Para el Comercio Exterior de Cuba ("Bancec") on a letter of credit. That ruling was based on the fact that Bancec had had no role in the expropriation of the Citibank Cuban assets.

Citibank sought Supreme Court review of our ruling in its case. Chemical did not seek such review, but when the Supreme Court granted certiorari in *Citibank*, the *Chemical* parties agreed to place the remainder of their action on the district court's suspense calendar, pending the Supreme Court's review of *Citibank*.

As discussed in greater detail below, the Supreme Court reversed our decision in *Citibank*, ruling that the application of equitable principles, in the circumstances of that case, required that Citibank be permitted to set off its claim against Bancec.

*Bancec,* 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46. Eventually, Chemical moved in this Court for recall and modification of our mandate in *Chemical,* contending that the type of reasoning used in *Bancec* requires the reinstatement of Chemical's counterclaim against Banco Nacional. We recalled the mandate and requested that the parties submit briefs with respect to the effect of the Supreme Court's decision in *Bancec.*

Having considered the arguments presented by the parties and reviewed our decision in *Chemical* in light of the Supreme Court's decision in *Bancec,* we conclude that our decision in *Chemical* should stand as rendered.

## DISCUSSION

The teaching of the Supreme Court in *Bancec* is that, while "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such," 462 U.S. at 626–27, 103 S.Ct. at 2600, the determination in each case of whether to allow a setoff against a foreign government instrumentality must be made in light of the circumstances of the case, and that determination must be informed by principles of equity and common law, *id.* at 628–30, 103 S.Ct. at 2601. Taking care to state that its "decision ... announce[d] no mechanical formula for determining the circumstances under which the normally separate juridical status of a government instrumentality is to be disregarded," *id.* at 633, 103 S.Ct. at 2603, the Court concluded that the application of equitable principles to the circumstances of the litigation between Citibank and Bancec required that Citibank be allowed to set off its claim against Bancec. The circumstances relied on included the following.

In August 1960, Bancec had entered into a commercial transaction in the course of which it obtained a letter of credit issued by Citibank. Bancec assigned this letter of credit to Banco Nacional for collection. Banco Nacional presented the letter to Citibank for payment on or about September 15, 1960. Two days later, Citibank's Cuban branches were expropriated by the Cuban government, an action that eventually was held to violate international law, *see Banco Nacional de Cuba v. First National City Bank,* 478 F.2d 191, 194 (2d Cir.1973). A major role in the nationalization of those assets was played by Banco Nacional.

A few days after the expropriation, Citibank credited the account of Banco Nacional with the amount of the letter of credit, but set off against that credit its claim for the expropriation of its assets. In 1961, Bancec commenced the *Citibank* action to recover on the letter of credit. Shortly after bringing its action, Bancec was dissolved, and its rights, claims, and assets "peculiar to the banking business" were transferred to Banco Nacional. Its claim on the letter of credit devolved upon either Banco Nacional or the Cuban Ministry of Foreign Trade. As Banco Nacional then owned the Citibank assets and the Ministry was an integral part of the Cuban government, each had a significant role with respect to the expropriation of Citibank's assets.

Eventually, the Bancec claim was transferred to still another Cuban government agency. Nonetheless, for a time after the Citibank action was brought, Bancec's claim on the letter of credit was held by an entity that could be held liable to Citibank for the expropriation of its assets. It was principally this fact that led the Supreme Court to conclude that it would be unfair to give posthumous effect to Bancec's separate juridical status and thus allow the Cuban government and Banco Nacional to enforce their claim against Citibank without allowing Citibank to set off against them its own claim for their unlawful seizure of its assets. *See, e.g.,* 462 U.S. at 615, 630–31, 631 n. 22, 633, 103 S.Ct. at 2594, 2602, 2602 n. 22, 2603. The Court found it immaterial that the Bancec claim had later been transferred from these agencies to another Cuban government agency that had had no role in the expropriation, essentially ruling that the claim of the latter agency could stand on no better

footing than the claim of Banco Nacional and the Cuban government and that the transfer as a device to gain a litigation advantage should be viewed as an abuse of the corporate form. *See id.* at 632–33, 103 S.Ct. at 2603.

The record does not indicate that any of the key factors pointed to in *Bancec* exist with respect to Chemical. Rather, the circumstances differ in many pertinent respects. First, the assets that were nationalized here and that are involved in Chemical's claim were not assets of Chemical Bank itself but rather were assets of a third party, Cuban Electric. Second, Chemical's legal premise is not that the expropriation violated its rights under international law but rather that the Cuban government, allegedly taking over the liabilities of Cuban Electric as well as its assets, breached the loan agreement. Nor, so far as we are aware, has there been any ruling by any court that the Cuban government's seizure of Cuban Electric violated international law. Third, the expropriation of Cuban Electric was done by and in favor of "the Cuban State"; the record does not indicate that Banco Nacional played any role in the expropriation or in the nationalization of those assets. Fourth, the record does not reveal that any Cuban Electric assets were ever transferred to Banco Nacional. Fifth, the claim asserted by Banco Nacional as to which the setoff is sought is a claim by Banco Nacional with respect to an account of its own, long maintained with Chemical; it is not a claim newly acquired as a result of the Cuban government's expropriation activities, and it is not a claim that was ever owned by the Cuban government in its own right. Finally, as to Banco Nacional's deposit with Chemical and its attempt to recover those funds, the record reveals no devious use of the corporate form of Banco Nacional, or of any other instrumentality, by the Cuban government.

In sum, Banco Nacional apparently has no right, and has never had a right, to sue on any claim that ever belonged to Cuban Electric; nor does it appear that there is any traditional basis for ruling that Chemical's claim against Cuban Electric or its successor for breach of contract would have been assertable against Banco Nacional. Thus, in the present case, unlike *Citibank-Bancec,* there has never been a single entity that had both the right to enforce the plaintiff's claim and the obligation to pay the debt sought to be collected by the defendant. We conclude, therefore, that the circumstances in the *Citibank-Bancec* litigation that required, as a matter of equity, that Citibank be allowed to set off its claim for the unlawful expropriation of its Cuban assets against the claim on the Bancec letter of credit do not exist here.

Nor do we see any other circumstances in the present case that would make it unfair to accord to Banco Nactional the normal recognition given to the separateness of governmental entities established to exist and operate independently of their sovereign, and thereby to preclude assertion of Chemical's Cuban Electric counterclaim against Banco Nacional. Chemical has pointed to no such circumstances and merely argues that denial of the setoff is unfair because (a) Banco Nacional is an instrumentality of the Cuban government, (b) Banco Nacional's success in collecting the balance in its account from Chemical will therefore inure to the benefit of the Cuban government, and (c) it is the Cuban government that has seized the assets of Cuban Electric and refused to pay Cuban Electric's debts. These facts can hardly suffice to require deviation from the normal rule. Allowing a setoff solely on this basis would suggest instead a general rule that no instrumentality of any foreign government could collect a debt owed it by an American bank without setoff of any debt owed to that bank by any entity that had been expropriated by that foreign government. This would be a bright-line rule indeed, and since the Supreme Court disavowed any intention to establish such a mechanical formula, we conclude that Chemical's argument should be rejected.

## CONCLUSION

The motion for modification of our decision in *Chemical* is denied.