Norman GABAY, Plaintiff,

v.

MOSTAZAFAN FOUNDATION OF IRAN a/k/a the Foundation for the Oppressed, an agency or instrumentality of the Government of the Islamic Republic of Iran and Mostazafan Foundation of New York, as alter ego of Mostazafan Foundation of Iran, Defendants.

No. 92 Civ. 6954 (KMW).

United States District Court, S.D. New York.

Oct. 15, 1993.

251

Arthur W. Rovine, Baker & McKenzie, New York City, for plaintiff.

John D. Winter, Patterson, Belknap, Webb & Tyler, New York City, Bruno A. Ristau, Ristau & Abbell, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Plaintiff Gabay sues two defendants—the Mostazafan Foundation of Iran and the Alavi Foundation, also known as the Mostazafan Foundation of New York—to recover compensation for property allegedly expropriated in Iran. Defendants move separately to dismiss the complaint, arguing that (1) the court lacks subject matter jurisdiction over this action; (2) the court lacks personal jurisdiction over the Mostazafan Foundation of Iran; (3) plaintiff's claims are time-barred; (4) as to the Alavi Foundation, the complaint fails

to state a cause of action on which relief may be granted; and (5) the Act of State doctrine bars the court from hearing plaintiff's claim.[1] Because subject matter jurisdiction is a threshold matter for a federal district court in any action against a foreign sovereign or its agency or instrumentality, *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493–94, 103 S.Ct. 1962, 1971–72, 76 L.Ed.2d 81 (1983), the court considers only subject matter jurisdiction here. For the reasons stated below, the court denies defendants' motions to dismiss without prejudice to their renewal, and directs the parties to conduct limited discovery as to the relationship between the Mostazafan Foundation of Iran and the Alavi Foundation. An evidentiary hearing will be held after the ordered discovery has been conducted if the court deems it necessary.

### Background

Plaintiff was born in Iran and owned and operated a substantial carpet and textile business there. In 1971, plaintiff emigrated to the United States, where he founded an American company to import carpets and export raw materials and machinery to plaintiff's business in Iran. He continued to own and operate the Iranian business. Plaintiff became an American citizen in 1981.

Defendant Mostazafan Foundation of Iran ("Iranian Foundation") was created by order of the Ayatollah Khomeini, leader of the revolutionary government of the Islamic Republic of Iran, to centralize, take possession of, and manage property expropriated by the revolutionary government (Iranian Found. Mem.Ex. 3 at 1–2). The second defendant in this action, the Alavi Foundation ("New York Foundation"), is a non-profit corporation incorporated under the laws of the State of New York. Before a recent amendment to its certificate of incorporation, the Alavi Foundation was known as the Mostazafan Foundation of New York (Pl.'s Reply to Iranian Found. Mem.Ex. F at 2). Plaintiff al-

1. The Mostazafan Foundation of Iran moves to dismiss on the ground that the court lacks subject matter and personal jurisdiction, that the Act of State doctrine prevents the court from hearing plaintiff's claim, and that plaintiff's action is time-barred. The Alavi Foundation moves to dismiss on the ground that plaintiff has failed to state a claim for which relief may be granted and that the action is time-barred. Because the defendants' arguments exhibit considerable overlap, this opinion and order treats them together except where otherwise stated.

leges that the Mostazafan Foundation of New York was created in 1979, when the revolutionary government of Iran took over the Pahlavi Foundation, an entity formerly controlled by the Shah of Iran and other Iranian officials. According to plaintiff, the Mostazafan Foundation of Iran assumed complete control over the Pahlavi Foundation, renamed it the Mostazafan Foundation of New York, and converted it into an arm of its Iranian namesake. Plaintiff alleges that the New York Foundation has been under the control of the Iranian Foundation since that time, and still is under its control, such that the commercial activity of the New York Foundation in the United States can be attributed to the Iranian Foundation. In 1992, the New York Foundation's name was changed to the Alavi Foundation (Rovine Aff. Ex. 29).

It is uncontested that at some time between the beginning of 1981 and the end of 1983, the Iranian Foundation expropriated plaintiff's Iranian carpet and textile business without compensation. A decision of the Supreme Court of the Islamic Revolution approving the expropriation of one of plaintiff's factories stated that the taking was "in line with principles" because plaintiff and his family were "fugitive Jews" living abroad, and thus "outside the Islamic Government protection" (Pl.'s Reply to Iranian Found. Mem.Ex. A). On December 28, 1981, under a pseudonym, plaintiff filed an action against the government of Iran in the U.S. Court for the Central District of California. *Bernard G. Martin, a pseudonym v. Government of Iran, et al.,* 81 Civ. 6501 (RJK). This action was dismissed without prejudice in February of 1982, pursuant to Executive Order 12294, which gave exclusive jurisdiction over takings claims of U.S. citizens against the government of Iran to the Iran–United States Claims Tribunal at The Hague, The Netherlands ("the Tribunal").[2] The Tribunal is an arbitral body established under the 1981 Algiers Accord to hear claims by U.S. Citizens whose property was expropriated by the revolutionary government of Iran before January 19, 1981. The Tribunal has no jurisdiction over takings that occurred after January 19, 1981.

Plaintiff instituted an action before the Tribunal on January 19, 1982. More than ten years later, on July 10, 1991, the Tribunal dismissed plaintiff's claim for lack of jurisdiction because plaintiff was unable to prove that his property was taken before January 19, 1981. Plaintiff's August 12, 1991 request that the Tribunal reconsider its decision was denied. On September 22, 1992, plaintiff instituted this lawsuit.

## I. Subject Matter Jurisdiction Over Plaintiff's Expropriation Claim

The Foreign Sovereign Immunities Act (FSIA) sets forth "the sole basis" for obtaining subject matter jurisdiction over foreign states and their agencies and instrumentalities in the federal courts. *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989); *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983). Under the FSIA, foreign states and their agencies or instrumentalities are immune from jurisdiction in U.S. courts unless one of the statute's explicit exceptions to immunity applies. 28 U.S.C. § 1604, §§ 1605–07. Here, it is undisputed that the Iranian Foundation is an agency or instrumentality of the Iranian government within the meaning of the FSIA. 28 U.S.C. § 1603(b). Therefore, conduct by the Iranian Foundation is immune from suit by plaintiff unless it falls under one of the statutory exceptions. Plaintiff argues that jurisdiction is proper under the "expropriation" exception, § 1605(a)(3), which provides that a foreign state or its agency or instrumentality is not immune from jurisdiction in the U.S. in cases in which

> rights in property taken in violation of international law are in issue and ... that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is

---

**2.** Executive Order No. 12294, February 24, 1981, suspended all takings claims by U.S. citizens against the Iranian government not brought before the Tribunal, except those filed for the pur-

pose of tolling a statute of limitations. The suspension terminates upon a determination by the Tribunal that it lacks jurisdiction over the claim.

engaged in a commercial activity in the United States ...

28 U.S.C. § 1605(a)(3).[3]

■ Defendants do not dispute that plaintiff's property was taken by the Iranian Foundation in violation of international law. Nor do they contest the claim that the Iranian Foundation owns and operates plaintiff's property, or property exchanged for such property. However, the Iranian Foundation argues that the § 1605(a)(3) exception to sovereign immunity is inapplicable because the Iranian Foundation is not engaged in a commercial activity in the United States.[4] Plaintiff contends that the Iranian Foundation *is* engaged in a commercial activity in the United States through the New York Foundation, its alleged "alter ego." Although defendants do not disagree that the New York Foundation engages in commercial activity in the United States, defendants contend that the two foundations are separate entities, and thus that the activity of the New York Foundation cannot be attributed to the Iranian Foundation for jurisdictional purposes.

## A. Whether the Commercial Activity of One Foreign Instrumentality May Be Attributed to Another For Purposes of FSIA Jurisdiction

■ The United States Supreme Court addressed the "alter ego" argument in the context of the FSIA in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) (*Bancec*), where it considered whether the claim of a foreign agency was subject to set-off for the debts of its parent government. The *Bancec* Court held that agencies and instrumentalities of foreign governments are entitled to a presumption of independent status that can be overcome only where "internationally recognized equitable principles" require disregarding the corporate form in order to avoid injustice. *Id.* at 627, 633. The Court suggested two situations in which the presumption of separateness might be overcome: (1) where "a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created" and (2) where recognizing the separateness of the agency or instrumentality "would work fraud or injustice." *Id.* at 629, 103 S.Ct. at 2601. Although in *Bancec,* the "alter ego" question arose in the context of substantive liability, lower courts have applied *Bancec*'s analysis to issues of FSIA jurisdiction as well. *See, e.g., Arriba Ltd. v. Petroleos Mexicanos,* 962 F.2d 528, 533–34 (5th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992); *Foremost–McKesson, Inc. v. The Islamic Republic of Iran,* 905 F.2d 438, 446 (D.C.Cir.1990); *Hester International Corp. v. The Federal Republic of Nigeria,* 879 F.2d 170 (5th Cir. 1989); *Baglab v. Johnson Matthey Bankers Ltd.,* 665 F.Supp. 289 (S.D.N.Y.1987). Under *Bancec* and its progeny, then, plaintiff has the burden of overcoming the presumption of independence on the part of defendant foundations. *Arriba,* 962 F.2d at 534; *Foremost–*

---

**3.** The full text of § 1605(a)(3) provides: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ...

  (3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

**4.** The Iranian Foundation also argues that § 1605(a)(3) is inapplicable because the statute requires plaintiff's property, or property exchanged for such property, to be present in the United States (Iranian Found. Mem. at 10–12).

This argument rests on a misreading of the statute. Although the first clause of § 1605(a)(3) provides an exception for expropriation of property in violation of international law when "that property or any property exchanged for such property *is present in the United States* in connection with a commercial activity carried on in the United States by the foreign state," *see supra* note 3, the second clause of the expropriation exception contains no such "presence" requirement. Cf. *Antares Aircraft v. Federal Republic of Nigeria,* 948 F.2d 90, 97 (2d Cir.1991), *vacated on other grounds,* — U.S. —, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992), *aff'd on reh'g,* 999 F.2d 33 (2d Cir.1992) (where plaintiff does not allege that expropriated property is present in U.S., inquiry shifts to whether property is owned by an agency or instrumentality that engages in commercial activity in the U.S.).

*McKesson,* 905 F.2d at 447; *Letelier v. Republic of Chile,* 748 F.2d 790, 795 (2d Cir. 1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); *Baglab,* 665 F.Supp. at 296–97.

Plaintiff appears to invoke the first ground set forth in *Bancec* for overcoming the presumption of independence of the New York Foundation from the Iranian Foundation— the existence of a principal/agent relationship. Plaintiff alleges that the New York Foundation is "so dominated and controlled by" the Iranian Foundation as to render it the latter's "instrumentality or alter ego," and that the New York Foundation "[does] not act independently, but instead act[s] at the direction of ... Mostazafan (Iran)." Complaint at ¶¶ 23, 24.[5] The *Bancec* Court declined to state a "mechanical formula" for determining when the separate status of foreign agencies and instrumentalities should be disregarded, *Bancec,* 462 U.S. at 633, 103 S.Ct. at 2603, but courts applying the principal/agent prong of the *Bancec* test have required the party seeking to overcome the presumption of separateness to show that the alleged principal exercises "general control over the day-to-day activities" of its alleged agent. *Baglab,* 665 F.Supp. at 297. *See also Hester,* 879 F.2d at 178 (core question is whether alleged principal "had assumed day-to-day operation of the instrumentality which it owned"); *Kalamazoo Spice Extraction Co. v. Provisional Military Government of Socialist Ethiopia,* 616 F.Supp. 660 (D.C.Mich. 1985) (attributing foreign instrumentality's contacts with the U.S. to its principal because principal "exercised direct control" over instrumentality). Necessarily, such a showing is highly fact-dependent. In light of the factual dispute underlying the issue of jurisdiction in this case, plaintiff argues that he is entitled to pursue discovery as to the relationship between the two defendants. The defendants counter that if the court lacks subject matter jurisdiction over the claim, they cannot be subjected to discovery, and contend that plaintiff's allegations of a principal/agent relationship are insufficient as a matter of law.

## B. *Whether Plaintiff's Alter Ego Claim is Insufficient as a Matter of Law*

■ Defendants argue that plaintiff has not alleged that the New York Foundation was a party to the expropriation of plaintiff's property, and therefore his "alter ego" claim is legally insufficient (New York Found. Mem. at 13; Iranian Found. Sur–Reply at 7). If defendants were correct, plaintiff would not be entitled to go forward with even limited discovery. *Arriba,* 962 F.2d at 537 n. 17. Defendants' argument is unpersuasive, however; it displays a confusion between the expropriation exception to sovereign immunity which is at issue here, and the more commonly invoked "commercial activity" exception, 28 U.S.C. § 1605(a)(2).[6] Plaintiffs assert FSIA jurisdiction under § 1605(a)(2) more frequently than under § 1605(a)(3), and thus alter ego claims arise more frequently under that section. Section 1605(a)(2) provides for an exception to sovereign immunity where the action is *"based upon"* the specified commercial activity by the foreign entity. When a plaintiff grounds the "commercial

---

**5.** Plaintiff also argues that it would "work a fraud or injustice" to recognize the independent status of the New York Foundation because doing so would permit the Iranian Foundation to "shield its assets ... based on an illusory corporate fiction." Complaint at ¶ 30. As the court observed in *Minpeco, S.A. v. Hunt,* 686 F.Supp. 427, 432 (S.D.N.Y.1988), however, this argument begs the question. Recognizing the independence of the New York Foundation would work a fraud or injustice on this argument only if the latter *is* an illusory corporate fiction, which plaintiff has yet to establish. Hence the Court focuses here on plaintiff's claim that the Iranian Foundation exercises sufficient control over the New York Foundation to conclude that the two have a principal/agent relationship.

**6.** Section 1605(a)(2) provides: A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ...

> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States; "Foreign state" includes both a foreign government and its agency or instrumentality. 28 U.S.C. § 1603(a).

activity" exception on an alter ego theory, courts have quite naturally required the alleged alter ego to be directly involved in the wrong done to plaintiff; only thus can there be the required nexus between the commercial activity of the entity and the basis of the lawsuit. *See, e.g., Arriba Ltd. v. Petroleos Mexicanos,* 962 F.2d at 534, & n. 17; *Gibbons v. Republic of Ireland,* 532 F.Supp. 668, 671 (D.D.C.1982); *Baglab,* 665 F.Supp. at 294. In the portion of § 1605(a)(3) at issue here, in contrast, there is no such "nexus" requirement. Defendant must be engaged in commercial activity in the United States, but that activity need not have anything to do with the substance of the lawsuit. Therefore no allegation that the New York Foundation participated in the expropriation of plaintiff's property is necessary in this case.

It is true that, where a plaintiff seeks to attribute a wrong committed by one entity to another under an alter ego theory, courts frequently require participation in the wrong by both entities, or an abuse of the corporate form to commit the wrong. *See Hercaire*

*International, Inc. v. Argentina,* 821 F.2d 559, 564–65 (11th Cir.1987); *Banco Nacional de Cuba v. Chemical Bank New York Trust Co.,* 782 F.2d 377, 380 (2d Cir.1986); *Letelier v. Republic of Chile,* 748 F.2d at 794–95. But these cases are relevant only to the extent that the plaintiff seeks to attribute the wrong done him by the *Iranian* Foundation to the *New York* Foundation, an issue the court need not deal with at this juncture. The question presently addressed by the court is that of the court's FSIA jurisdiction over plaintiff's claim against the Iranian Foundation. That question involves a different attribution problem: whether the commercial activities of the New York Foundation can be attributed to the Iranian Foundation.[7]

■ For these reasons, the court cannot conclude that plaintiff's claim is so legally insufficient that he is precluded from discovery as a matter of law. Instead the issue is whether, in light of the deference to foreign sovereigns and their instrumentalities embodied in the FSIA, permitting limited discovery is appropriate.[8]

7. For somewhat different reasons, the Iranian Foundation's reliance on *Antares Aircraft v. Federal Republic of Nigeria,* 948 F.2d 90 (2d Cir. 1991), *vacated,* — U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 *aff'd on reh'g,* 999 F.2d 33 (1993), is inapposite. In that case, plaintiff failed to offer any evidence that the defendant instrumentality engaged in commercial activity in the United States. Plaintiff attempted to overcome this defect by arguing that the commercial activity of the sovereign state could be attributed to the instrumentality on an alter ego theory. The Second Circuit Court of Appeals dismissed because plaintiff's theory asked the Court to attribute the activity of a *principal* to an *agent,* rather than that of an agent to a principal. The Court held that this was improper. Here, plaintiff asks that the activity of an alleged agent, the New York Foundation, be attributed to an alleged principal, the Iranian Foundation.

8. Plaintiff suggests for the first time in his Reply Memorandum that jurisdiction is proper under 28 U.S.C. § 1605(a)(2), the "commercial activity" exception. Although neither plaintiff nor defendants brief this issue, the Court is entitled to address it *sua sponte. Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493 n. 20, 103 S.Ct. 1962, 1971 n. 20, 76 L.Ed.2d 81 (1983). Section 1605(a)(2) provides for an exception to immunity in cases in which, among other things, "the action is based ... upon an act outside the territory of the United States in connection with a commercial activity of the foreign [instrumentality] elsewhere and that act causes a direct

effect in the United States." *See supra* note 6 for full text of § 1605(a)(2).

The court concludes that it cannot assert jurisdiction over this action under § 1605(a)(2), because plaintiff has failed to satisfy that section's "direct effect" requirement. To determine where the "direct effect" of an act takes place, "courts often look to the place where legally significant acts giving rise to the claim occurred." *Weltover, Inc. v. Republic of Argentina,* 941 F.2d 145 (2d Cir.1991), *aff'd, Republic of Argentina v. Weltover,* — U.S. ——, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). Here, the "legally significant act" was the expropriation of plaintiff's property in Iran.

Plaintiff alleges that the taking of his property in Iran nevertheless caused losses to his business in the United States by "severing the link" between it and his Iranian business (Plaintiff's Reply Mem. to Iranian Found. at 26). To the extent this allegation means simply that plaintiff suffered a loss of assets in the United States, it is legally insufficient to ground jurisdiction under § 1605(a)(2). "As a general matter, ... '[m]ere financial loss' suffered by a person, whether individual or corporate, in the United States is not, in itself, sufficient to constitute a 'direct effect.'" *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 710 (9th Cir.1992). *See also Antares Aircraft v. Federal Republic of Nigeria,* 999 F.2d 33 (2d Cir.1993). Decisions finding that conduct abroad had a "direct effect" in the United States have involved a closer nexus between the con-

## C. Whether Limited Discovery Is Appropriate

■ The court recognizes that conflicting policies must be weighed in deciding whether to permit preliminary discovery in this case. On the one hand, sovereign immunity provides not merely a defense to liability, but immunity from the burdens of litigation as well. As the Court of Appeals for the Fifth Circuit stated, "[s]everal courts have observed the tension between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir.1992). On the other hand, courts have emphasized that the issue of subject matter jurisdiction under the FSIA should not be resolved without adequate development of the factual record. In *Gilson v. Republic of Ireland*, 682 F.2d 1022 (D.C.Cir. 1982), for example, the Court of Appeals for the D.C. Circuit remanded the issue of FSIA jurisdiction to the district court for explicit factual findings. Noting that "the district court's ultimate determination of whether jurisdiction is proper may hinge on whether the required agency existed, and for whom," *id.* at 1026 n. 16, the Court of Appeals found that the dismissal of plaintiff's claim was "premature in light of the dearth of fact-finding done by the district court thus far." *Id.* In *Foremost–McKesson, Inc. v. The Islamic Republic of Iran*, the same Court of Appeals again remanded a jurisdictional dispute involving an "alter ego" claim to the district court for factual findings. Quoting *Gould v. Pechiney Ugine Kuhlmann*, the Court of Appeals stated:

> "Since entitlement of a party to immunity from suit is such a critical preliminary determination, the parties have the responsibility, and must be afforded a fair opportunity, to define issues of fact and law, and to submit evidence necessary to the resolution of the issues." Thus, to address a motion to dismiss under Rule 12(b)(1) where the suit involves a foreign sovereign and the court's jurisdiction over the sovereign is contested, the district court must do more than just look to the pleadings to ascertain whether to grant the motion to dismiss.

*Foremost–McKesson*, 905 F.2d at 449 (quoting *Gould*, 853 F.2d 445, 451 (6th Cir.1988), *cert. dismissed, Pechiney and Trefimetaux v. Gould, Inc.*, —— U.S. ——, 112 S.Ct. 1657, 118 L.Ed.2d 317 (1992). *See also Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir.1989) (holding, in "alter ego" case, that "generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue").

Here, plaintiff has done more than make conclusory allegations that the New York Foundation is the Iranian Foundation's agent. He has offered an array of documents that, taken together, provide support for the following claims: that the Iranian Foundation claims to have "taken over" the management of the New York Foundation (then the Pahlavi Foundation) in 1979 (Rovine Aff.Ex. 13 at 2); that the Iranian Foun-

duct and the United States—such as a direct relationship between the foreign defendant and the U.S. plaintiff, or a duty to pay in the United States—than financial loss alone. *See, e.g., Republic of Argentina v. Weltover, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2160, 2168, 119 L.Ed.2d 394 (1992) (rescheduling of maturity dates on Argentinian bonds had "direct effect" in U.S. because New York was "place of performance for Argentina's ultimate contractual obligations"); *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1111 (5th Cir.1985) (finding "direct effect" where foreign instrumentality engaged in "regular course of business conduct with plaintiff," and contrasting cases in which U.S. contacts were "purely fortuitous"). In short, the contact with the U.S. must depend on more than "the fact that the injured person[] happened to be American." *Callejo*, 764 F.2d at 1111.

To the extent plaintiff's argument is that the taking in Iran prevented his American company from doing business with his Iranian companies, the court finds this allegation, too, is insufficient. If the "direct effect" requirement were satisfied this easily, a foreign sovereign who expropriated a company could be sued in federal court for its action by anyone whose business dealings were interrupted by the expropriation, including any former, unrelated customer. The court does not believe that this is what Congress intended. Because the court concludes that plaintiff has not met the "direct effect" requirement, the court need not reach the question of whether the expropriation of his property took place "in connection with a commercial activity" within the meaning of the FSIA.

dation closely controlled or supervised the New York Foundation (Rovine Aff.Ex. 14 at 20; Ex. 31 at 1); and that the New York Foundation has used its funds in a way that violated its corporate charter, possibly commingling then with those of the Iranian Foundation (Rovine Aff.Ex. 19 at 2). Although these documents by themselves are legally insufficient to overcome the presumption of the New York Foundation's independence, and although many of plaintiff's supporting documents—which include newspaper articles, publications by the Iranian Foundation, and a complaint filed by a former employee of the New York Foundation, later withdrawn—do not constitute evidence admissible at trial, they suggest that admissible evidence might well be obtained if discovery were permitted. Thus they are sufficient to convince the court that dismissal of plaintiff's claim without discovery on the "alter ego" issue would be premature.

In addition, the equities weigh in favor of permitting discovery in this case because the risk of significant encroachment on a foreign instrumentality's immunity from suit is slight. Under plaintiff's alter ego theory, discovery is likely to be directed primarily toward the New York Foundation, an entity incorporated under the laws of the State of New York over which this court unquestionably has jurisdiction. If defendants are proved correct that the two foundations are separate entities, there will have been no serious threat to the Iranian Foundation's immunity; if plaintiff is proved correct, discovery will have enabled him to seek relief for a serious wrong. The court therefore denies the Iranian Foundation's motion to dismiss without prejudice.

### D. The Scope of Discovery

■ Because permitting discovery may tend to undercut the immunity from litigation that foreign instrumentalities were intended to enjoy, the court must ensure that factfinding in this case is limited to "the essentials necessary to determining the preliminary question of jurisdiction." *Gould,* 853 F.2d at 451; *see also Foremost–McKesson,* 905 F.2d at 449; *Arriba,* 962 F.2d at 534. The briefs submitted to the court thus far are an insufficient basis on which to determine the proper scope of preliminary discovery. The court therefore directs plaintiff to submit an appropriately limited discovery plan—including proposed subpoenas, notices of depositions and interrogatories, and requests for document production and admissions—setting forth with specificity the factual allegations he hopes to prove and the method by which he proposes to do so. The plan should be accompanied by a supporting memorandum of law and must be submitted to the court by November 12, 1993. Defendants are directed to submit responsive memoranda and any objections to the proposed discovery requests by November 29, 1993. Because the key question is whether the Iranian foundation exercised control over the day-to-day activities of the New York Foundation, the court expects the parties' briefs to focus on this issue, and expects proposed discovery to be directed primarily toward the business practices of the New York Foundation. The court will hold a conference with the parties pursuant to Fed.R.Civ.P. 26(f) no later than December 10, 1993, to address discovery issues.

### II. Plaintiff's Claim Against the New York Foundation

The position of the New York Foundation in this dispute is somewhat more complex than that of the Iranian Foundation. Under the FSIA, the New York Foundation is excluded from the definition of an "agency or instrumentality" of a foreign sovereign by § 1603(b)(3), because it is incorporated under the laws of the State of New York and has New York as its principal place of business.[9]

---

9. 28 U.S.C. § 1603(b) defines an agency or instrumentality of a foreign state as "any entity—
   (1) which is a separate legal person, corporate or otherwise, and
   (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares of or other ownership interest is owned by a foreign state or political subdivision thereof, and
   (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

Technically, therefore, this court cannot assert jurisdiction over the New York Foundation for that foundation's *own* conduct pursuant to the FSIA. Instead, in a dispute involving only the plaintiff and the New York Foundation, this court would have diversity jurisdiction pursuant to 28 U.S.C. § 1332. Perhaps for this reason, the New York Foundation has not based its motion to dismiss on lack of jurisdiction, but argues that plaintiff has failed to state a claim on which relief may be granted, and that the applicable statute of limitations has run. As the court understands it, the New York Foundation's argument is that plaintiff has failed to state a cause of action against it because plaintiff has alleged insufficient grounds on which to attribute the Iranian Foundation's conduct to the New York Foundation (New York Found. Mem. at 10–15). This argument goes to the potential liability of the New York Foundation, rather than to the jurisdiction of the court.

■ The question presently before the court, however, is not the viability of plaintiff's claim against the New York Foundation, but the issue of the court's subject matter jurisdiction over the dispute as a whole. Plaintiff does not sue the New York Foundation for its own conduct; as noted above, he does not allege that the New York foundation owns his property or property exchanged therefore, or that the New York Foundation participated in the expropriation of his property. Rather, plaintiff sues the New York Foundation as the "alter ego" of the Iranian Foundation and as the entity through which the Iranian Foundation engages in "commercial activity" in the United States. Thus subject matter jurisdiction over the expropriation claim is a threshold issue that, if resolved in the negative, disposes of the plaintiff's claims against both defendants. In addition, although the adequacy of plaintiff's claim against the New York Foundation and the court's jurisdiction over plaintiff's claim against the Iranian Foundation are theoretically separate questions, they are practically interwoven, because both depend upon plaintiff's alter ego theory. In light of

this interrelationship, and in light of the limited discovery necessary to resolve the jurisdictional issue, it would be premature to grant the New York Foundation's motion to dismiss. The New York Foundation's motion is therefore denied without prejudice.

### Conclusion

For the reasons stated above, the court denies defendants' motion to dismiss without prejudice, in order that preliminary discovery may take place as to the court's subject matter jurisdiction over plaintiff's expropriation claim. Plaintiff is ordered to submit a proposed discovery plan and supporting legal memorandum as set forth on page 17 of this opinion and order by November 12, 1993. Defendants are ordered to submit responsive memoranda and objections as set forth on page 257 of this opinion and order by November 29, 1993. The parties are ordered to appear before the court for a discovery conference at 4:00 p.m. on December 10, 1993.

SO ORDERED.

---

28 U.S.C. § 1332(c) provides that "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."