**OLYMPIC CHARTERING S.A., Plaintiff,**

v.

**MINISTRY OF INDUSTRY AND TRADE OF JORDAN f/k/a Ministry of Supply of Jordan, Defendant.**

**No. 99 Civ 6086 KMW JCF.**

United States District Court, S.D. New York.

Feb. 6, 2001.

Patrick F. Lennon, Kevin J. Lennon, Tisdale & Lennon, LLC, New York City, for plaintiff.

Eric L. Hirschhorn, Winston & Strawn, Washington, D.C., Laurence V. Senn, Jr., Richard T. Marooney, Jr., King & Spalding, New York City, for defendant.

## ORDER

KIMBA M. WOOD, District Judge.

In an attempt to satisfy a $1.7 million default judgment against the Ministry of Industry and Trade of Jordan [the "Ministry"], petitioner seeks to execute the judgment against assets held at the Arab Bank and seeks discovery from the Arab Bank concerning various transactions of the Ministry and the Central Bank of Jordan ["CBJ"]. In a Report and Recommendation (the "Report") dated August 1, 2000, Magistrate Judge James C. Francis IV recommended that the Court deny petitioner's 28 U.S.C. § 1610(c) motion and Rule 37 motion to compel discovery, and grant CBJ's motions to intervene, to quash the writ of execution, and to quash petitioner's subpoena. For the reasons stated below, the Court adopts the Report, familiarity with which is assumed, in its entirety.

## DISCUSSION

The Court reviews the Report *de novo.* *See* 28 U.S.C. § 636(b).

### A. Intervention

■ The Court adopts the Report's persuasively reasoned conclusion that CBJ has a "direct, substantial, and legally protectable" interest in this case. *See Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 922 F.2d 92, 96–97 (2d Cir.1990). Petitioner's concession that its initial writ of execution was invalid does not eliminate CBJ's interests in protecting its accounts and the confidentiality of its transactions, particularly as petitioner has asserted its intention of seeking to execute against CBJ's account in a new writ of execution.[1] (Olympic Chartering's Reply Memorandum, dated Apr. 20, 2000, ["Pet.'s Reply Mem."] p. 16.)

### B. Foreign Sovereign Immunities Act

The Court adopts the Report's reasoning and conclusion that petitioner's writ of execution and information subpoena implicate issues of foreign sovereign immunity.[2] It is evident that the writ of execution was levied on CBJ's account (*see* Rider to Writ of Execution, Motion to Compel, Exh. 2) and that the information subpoena sought information about CBJ's activities (*see* Subpoena ¶¶ 2, 4, 9.) Petitioner's objections on these grounds, therefore, are without merit.

---

1. The Court rejects petitioner's claim that CBJ's motions were untimely. Petitioner provides no caselaw in support of this claim, nor factual allegations that CBJ failed to respond promptly when made aware of petitioner's writ and subpoena.

2. The Court agrees with Magistrate Judge Francis's conclusion that Shahin's declaration

is in substantial compliance with 28 U.S.C. § 1746 for the reasons set forth in the Report. The Court also agrees with Magistrate Judge Francis's decision to allow CBJ to submit a surreply subsequent to petitioner's submission of further documents in support of its motion. Both the Shahin declaration and the surreply are deemed part of the record in this case.

### 1. Immunity from Attachment

■ The Court adopts the Report's careful analysis of immunity under the FSIA and its conclusion that CBJ's property held by the Arab Bank is immune from attachment. Accordingly, the writ of execution, directed against CBJ's account, should be quashed. The Court notes, moreover, that the writ should be quashed in any event, because petitioner concedes its invalidity. (*see* Petitioner's Rule 72 objections ["Objections"], p. 2.) The Court rejects petitioner's claim that it deserves jurisdictional discovery; petitioner has made no allegation that CBJ is an alter ego of the judgment debtor nor of "fraud or injustice" involving CBJ. *See First National City Bank v. Banco Para El Comercio Exterior de Cuba ("Bancec")*, 462 U.S. 611, 629, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983).

### 2. Immunity from Discovery

■ The Court also adopts the Report's analysis of immunity from discovery under the FSIA and its conclusion that CBJ has standing to challenge petitioner's subpoena against Arab Bank and that CBJ is immune from discovery. Because the subpoena seeks confidential information about CBJ's activities, CBJ's standing to contest the subpoena is indisputable. *See Sierra Rutile Ltd. v. Katz*, No. 90 Civ. 4913, 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994). Moreover, immunity provides protection both from liability and the burdens of discovery. *See Gabay v. Mostazafan Foundation of Iran*, 151 F.R.D. 250, 256 (S.D.N.Y.1993).

The authorities cited by petitioner do not compel another result. *Raji v. Bank Sepah–Iran*, 139 Misc.2d 1026, 529

N.Y.S.2d 420, 422–24 (N.Y.Sup.1988), involved a defendant commercial bank found to have waived any potential immunity. Similarly, *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1472 n. 2, 1477–78 (9th Cir.1992), involved post-judgment discovery requests against a defendant commercial entity. Neither decision considers the immunity from discovery of a non-debtor central bank. Petitioner's reliance on *First City, Texas–Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir.1998), is also misplaced. In that decision, petitioner alleged an "alter ego" relationship between the central bank and the debtor bank and sought discovery on this issue. Because petitioner in this case has not alleged such an alter ego relationship, and because CBJ has presented uncontroverted evidence that its holdings at Arab Bank do not include assets of the judgment debtor, there is no basis for petitioner's request for additional discovery against CBJ, and the balancing test required by *Rafidain* tips strongly in favor of CBJ. Contrary to petitioner's assertion, the Report does not ignore petitioner's need for discovery, but merely precludes discovery against CBJ; the Court agrees that petitioner is free to serve a new subpoena on Arab Bank seeking information in conformity with the Report and this Order.[3]

### 3. Motion to Attach Assets of the Ministry

■ Petitioner has not challenged the Report's recommendation that its § 1610 motion be denied. The Court agrees with the Report's conclusion that petitioner's motion lacks the requisite specificity and thus should be denied at this time. *See Trans Commodities, Inc. v. Kazakstan*

---

**3.** It is within the "sound discretion" of the Court whether to quash or modify an overbroad subpoena. *See Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir.1994); *see also* FRCP 45(c)(3)(A) (court "shall quash or modify" improper subpoena). The Court accepts Magistrate Judge Francis's conclusion that quashing the subpoena was the better course in this case, and notes that petitioner has already served a new subpoena on Arab Bank.

*Trading House, S.A.,* No. 96 Civ. 9782, 1997 WL 811474 (S.D.N.Y. May 28, 1997).

## CONCLUSION

For the reasons set forth above, the Court denies petitioner's 28 U.S.C. § 1610(c) motion and Rule 37 motion to compel discovery, and grants CBJ's motions to intervene, to quash the writ of execution, and to quash petitioner's subpoena.

SO ORDERED.

## REPORT AND RECOMMENDATION

FRANCIS, United States Magistrate Judge.

The plaintiff in this action, Olympic Chartering, S.A. is seeking to execute a judgment against the defendant, the Ministry of Industry and Trade of Jordan f/k/a the Ministry of Supply of Jordan ("the Ministry"). Pursuant to the default judgment, a writ of execution was issued upon Arab Bank–New York ("Arab Bank") levying any funds, property or assets of the Ministry held in Arab Bank, including account number 7001–300050–051. The Central Bank of Jordan ("Central Bank"), an interested third party, has moved to intervene in this action, asserting that account number 7001–300050–051 at Arab Bank is the property of the Central Bank. The plaintiff opposes the Central Bank's motion to intervene.

The plaintiff moves pursuant to 28 U.S.C. § 1610(c) for an order permitting it to execute against the assets of the judgment-debtor. In addition, the plaintiff moves pursuant to Rule 37(a)(2)(B) and Rule 69 of the Federal Rules of Civil Procedure to compel Arab Bank to respond to a subpoena requesting information about Ministry and Central Bank accounts at

Arab Bank. The Central Bank and Arab Bank oppose the motion to attach the assets of the Ministry and the motion to compel, and cross-move to quash the writ of execution and levy upon bank account number 7001–300050–051 and to quash the subpoena. They argue that the Central Bank of Jordan is immune from attachment and discovery demands under the Foreign Sovereign Immunities Act ("FSIA"). For the following reasons, I recommend that the Central Bank's motion to intervene, motion to quash the writ of execution, and motion to quash the subpoena be granted. I also recommend that the plaintiff's motion pursuant to 28 U.S.C. § 1610(c) for a court order permitting attachment of the Ministry's assets be denied.[1]

*Background*

The underlying dispute between the parties involved the defendant's repudiation of a contract of charter for Olympic Chartering to deliver 100, 000 metric tons of bulk barley from Syria to Jordan. (Affidavit of Charles E. Murphy dated July 30, 1999 ("Murphy Aff."), Exh. 1; Final Arbitration Award dated Sept. 3, 1997, attached as Exh. 2 to Murphy Aff.). The contract was supported by a letter of credit in Olympic Chartering's favor, opened by the Central Bank and partially confirmed by the Central Bank's branch in Athens. (Letter of Credit, attached as Exh. D to Central Bank of Jordan's Notice of Motion and Cross–Motion dated April 17, 2000 ("Notice of Motion")). The letter of credit indicated that if the Central Bank's Athens branch paid the letter of credit, the Central Bank would reimburse its Athens branch with funds from the Central Bank's account in Arab Bank, account number 7001–300050–051. (Notice of Motion, Exh. D).

---

1. The Central Bank filed a notice of motion to file a supplemental brief on July 6, 2000, which was opposed by Olympic Chartering.

The supplemental brief has been accepted for the purposes of this opinion.

On January 10, 2000, a default judgment was entered against the Ministry and in favor of Olympic Chartering in the amount of $1,709,068.82. (Default Judgment dated January 10, 2000). On February 3, 2000, a writ of execution of the judgment was issued, and on February 16, 2000 the U.S. Marshal for the Southern District of New York served the writ of execution upon Arab Bank, levying any funds, property, or assets of the Ministry held in Arab Bank, including account number 7001–300050–051. (Notice of Motion, Exh. C). On March 13, 2000, Olympic Chartering filed a motion pursuant to § 1610(c) of the Foreign Sovereign Immunities Act ("FSIA") requesting permission to attach and execute against the assets of the defendant.

The plaintiff also served a subpoena on Arab Bank on February 25, 2000 seeking information about Ministry and Central Bank accounts. (Subpoena dated February 25, 2000 ("Subpoena"), attached as Exh. 3 to Motion to Compel dated March 13, 2000). Since Arab Bank has failed to respond, the plaintiff seeks to compel Arab Bank's compliance.

*Discussion*

A. *Intervention*

Under Rule 24(a) of the Federal Rules of Civil Procedure, intervention shall be granted

when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). The interest claimed by the intervenor must be "direct, substantial, and legally protectable." *Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d 92, 96–97 (2d Cir.1990); *see also Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F.Supp. 870, 874 (1991) (in post judgment proceeding, interest of intervenor-applicant must be "significantly protectable").

Olympic Chartering contends that the Central Bank does not have an interest in the instant proceeding since Olympic Chartering is not attempting to satisfy its judgment by executing against the assets of the Central Bank. However, the Central Bank alleges that the funds that have been levied pursuant to the execution of the judgment are owned by the Central Bank and not the Ministry. (Central Bank of Jordan's Memorandum of Law dated April 17, 2000 ("Central Bank Memo.") at 7). The Central Bank has submitted the declaration of its executive manager for the foreign investments and operations department, Mohammed Said Shahin. In his declaration, Mr. Shahin states that the Central Bank is the sole owner and account holder of Arab Bank account number 7001–300050–051 and that the Ministry does not have an interest in the funds in this account. (Declaration of Mohammed Said Shahin dated March 23, 2000, attached as Exh. B to Notice of Motion ("Shahin Decl.") ¶¶ 9, 15).[2] As these state-

---

2. Olympic Chartering claims that the declaration of Mohammed Said Shahin should be disregarded because it does not conform to the requirements for unsworn declarations. 28 U.S.C. § 1746(2) provides for the submission of an unsworn declaration if it is dated and subscribed to by the declarant in this form: "I declare ... under penalty of perjury that the foregoing is true and correct." If the declaration is executed outside of the United States, the statement should make reference to the laws of the United States. 28 U.S.C. § 1746(1). A declaration is admissible as long as it "substantially complies" with these statutory requirements. *LeBoeuf, Lamb, Greene & MacRae L.L.P. v. Worsham*, 185 F.3d 61, 65–66 (2d Cir.1999) (declaration that does

ments are uncontroverted, they are accepted as true and the account is deemed to be the property of the Central Bank. Thus, the Central Bank's interest in the account at Arab Bank is significant and will be "directly and immediately" affected by the litigation regarding execution. *Werbungs Und Commerz Union Austalt,* 782 F.Supp. at 874. In addition, no party to the litigation can adequately protect the Central Bank's interest in the Arab Bank account. Therefore, I recommend that the Central Bank's motion to intervene be granted.

## B. *Foreign Sovereign Immunities Act*

■ The FSIA is the exclusive basis for subject matter jurisdiction in any civil action initiated in a federal court against a foreign state. *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). This Court cannot exercise jurisdiction over a foreign state, an instrumentality of a foreign state, or the property of a foreign state unless the case falls within one of the exceptions to the statute's sovereign immunity provisions. *See* 28 U.S.C. §§ 1604, 1609; *see also* 28 U.S.C. 1603(a) (the definition of "foreign state" includes "an agency or instrumentality of a foreign state"). The Central Bank asserts that its assets at Arab Bank are immune from attachment and discovery under the FSIA.

In order to decide the pending motions, the Court must first determine whether foreign sovereign immunity questions are implicated. Olympic Chartering argues that it is only seeking to execute its judgment against the Ministry and that it is not seeking to attach the Central Bank's assets or to obtain information about the

Central Bank's assets at Arab Bank. (Olympic Chartering's Reply Memorandum of Law dated April 20, 2000, at 15). Hence, Olympic Chartering contends that the Central Bank's foreign sovereign immunity is not at issue.

However, as discussed above, the Arab Bank account levied by the writ of execution is the property of the Central Bank. (Shahin Decl. ¶¶ 9, 15). The Central Bank also argues that the subpoena directed to Arab Bank seeks information regarding the Central Bank's assets. The subpoena contains broad demands for information about the Central Bank's accounts at Arab Bank, such as requests for: "[e]ach and every statement of account in the name of the Central Bank of Jordan from January 1, 1990 through the present;" "[e]ach and every document which refers, relates to or concerns the transfer of funds to or from accounts of the Central Bank of Jordan from January 1, 1990 through the present . . .;" "[e]ach and every document, in any form, which refers, relates to or concerns any communication between any representative of the Central Bank of Jordan, including its legal counsel in the United States, if any, and any representative of Arab Bank PLC, regarding any of its accounts at Arab Bank PLC from January 1, 1990 through the present." (Subpoena, Requests ¶¶ 2, 4, 9). The subpoena and the writ of execution thus place the Central Bank's foreign sovereign immunity at issue.

### 1. *Immunity from Attachment*

28 U.S.C. § 1611(b)(1) states that the property of a foreign central bank or monetary authority is immune from attach-

---

not meet all requirements of § 1746 admissible because it substantially complies with requirements). Mr. Shahin's declaration states "I, Mohammed Said Shahin, declare that the following statements are made at my legal peril if untrue" and it is signed and dated.

While the declaration does not recite the exact wording of § 1746, it indicates that Mr. Shahin has accepted the penalties of perjury. Thus, the declaration substantially complies with the statutory requirements.

ment and execution provided that it is "held for its own account." Olympic Chartering does not dispute that the Central Bank qualifies as a "foreign central bank."[3] Furthermore, the Central Bank has demonstrated that the funds at issue were "held for its own account[.]" 28 U.S.C. § 1611(b)(1); *Banque Compafina,* 583 F.Supp. at 322. The legislative history of § 1611 indicates that funds "held for its own account" are funds used or held for central banking purposes rather than funds used solely to finance the commercial transactions of other entities or foreign states. H.R.Rep. No. 94–1487, at 31 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6630; *see also Concord Reinsurance Co. v. Caja Nacional de Ahorro y Seguro,* No. 93 Civ. 6606, 1994 WL 86401, at *2 (S.D.N.Y. March 16, 1994); *Weston Compagnie de Finance et D'Investissement, S.A., v. La Republica del Ecuador,* 823 F.Supp. 1106, 1112 (S.D.N.Y.1993). If the funds at issue are used for central bank functions as these are normally understood, then they are immune from attachment, even if used for commercial pur-

poses. *Weston Compagnie de Finance,* 823 F.Supp. at 1113.

The Central Bank's executive manager for the foreign investments and operations department declares that:

[t]he funds in [account number 7001–300050–051] are employed exclusively for central bank purposes, including the performance of general banking services for the Government of Jordan and its agencies and instrumentalities, the maintenance and investment of foreign currency reserves for the Government of Jordan, the maintenance of reserve requirements of banks in Jordan, and the exchange of currency for Jordanian banks.

.    .    .    .    .

CBJ does not use the funds in the Account to finance the commercial transactions of private parties, individuals, or other foreign states.

(Shahin Decl. ¶¶ 10, 13). Olympic Chartering has presented no evidence that the Central Bank has used the account to finance any commercial transactions that fall outside of central banking functions.[4]

---

**3.** The Central Bank performs activities which are understood to be foreign central bank activities. For example, the Central Bank is responsible for maintaining monetary stability in Jordan; it has the sole right to issue currency in Jordan; it maintains cash reserves collected from commercial banks and maintains the gold and foreign exchange reserves for Jordan; it is the banker and fiscal agent for the Jordanian government. (Banking Legislations in Jordan, attached as Exh. 1 to Declaration of Sharif Ali Zu'bi dated March 23, 2000, at Arts. 4, 4(b), 27, 42, 47). *See Banque Compafina v. Banco De Guatemala,* 583 F.Supp. 320, 320 (S.D.N.Y.1984) (Banco de Guatemala has authority to issue currency, to administer Guatemala's reserves, to engage in transactions so as to regulate money supply, and to act as depository for funds of Guatemala and is therefore a "foreign central bank" under 28 U.S.C. § 1611(b)(1)); *see also* Ernest T. Patrikis, *Foreign Central Bank Property: Immunity from Attachment in the United States,* 1982 U.Ill.L.Rev. 265, 274 & n. 37 (list

of characteristics of a foreign central bank include: regulation of currency, performance of general banking and agency services for its government, custody of cash reserves of commercial banks, custody and management of nation's reserves of international currency). Therefore, the Central Bank is clearly a "foreign central bank" for the purposes of 28 U.S.C. § 1611(b)(1).

**4.** Olympic Chartering has provided the Court with copies of what appear to be wire transfers involving an account at Arab Bank, possibly between the Central Bank and the Ministry. (Attachments to Letter from Patrick Lennon dated June 28, 2000). While these documents may indicate some exchange of funds between the Ministry and the Central Bank, they do not provide any evidence that the Central Bank has engaged in commercial activities outside of its central banking functions. *See Weston Compagnie de Finance,* 823 F.Supp. at 1113 ("the fact that a foreign central bank uses a dollar deposit account with a

Thus, the Central Bank has demonstrated that the funds are "held for its own account" and that its assets at Arab Bank are entitled to immunity under § 1611(b)(1). Consequently, I recommend that the motion to quash the writ of execution and levy against Arab Bank account number 7001–300050–051 be granted.

### 2. *Immunity from Discovery*

#### a. *Standing*

Olympic Chartering maintains that the Central Bank does not have standing to challenge the subpoena since the subpoena is directed to Arab Bank. While the general rule is that a party lacks standing to quash a third-party subpoena, *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir.1975), a party whose records have been subpoenaed has "a sufficient privacy interest in the confidentiality of [the] records" so as to assert standing to challenge the subpoena. *Sierra Rutile Ltd. v. Katz*, No. 90 Civ. 4913, 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994); *see also Syposs v. United States*, 181 F.R.D. 224, 227 (W.D.N.Y.1998). Since the subpoena requests information regarding accounts held by the Central Bank, it has standing to challenge the subpoena.

#### b. *Merits*

Determinations regarding discovery under the FSIA require a "delicate balancing 'between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery.'" *First City, Texas–Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir.1998) (quoting *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir.1992)). "[S]overeign immunity provides not merely a defense to liability, but immunity from the burdens of litigation as well." *Gabay v. Mostazafan Foundation of Iran*, 151 F.R.D. 250, 256 (S.D.N.Y.1993); *see also Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 849 (5th Cir.2000) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation").

Since Olympic Chartering has failed to demonstrate that the Central Bank falls within an exception to foreign sovereign immunity, the plaintiff is prohibited from seeking discovery on the Central Bank. After extensive research, this Court has not found any case where discovery was permitted once an entity was found to be immune.[5] *Cf. LNC Investments, Inc.*, 115 F.Supp.2d at 366 (plaintiff executed on assets of Central Bank and served restraining notice and information subpoena on bank where Central Bank's assets were located; court determined that Central Bank was not an alter ego of the judgment-debtor, was immune under the FSIA, and granted motion to quash the subpoena and restraining notice); *Arriba*, 962 F.2d at 537 & n. 17 (pleadings do not

---

bank in the United States to make or receive payments relating to the commercial activities of other foreign government agencies does not cause the central bank's actions to be regarded as a commercial activity").

**5.** An immune party may be subject to jurisdictional discovery and liability if the judgment creditor claims that it is an alter ego of a non-immune judgment debtor. *See First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621, 629, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983), (FSIA does not prevent entity from being held liable under substantive law; government entity is liable for actions of government if judgment creditor proves principal-agent relationship); *LNC Investments, Inc. v. The Republic of Nicaragua*, 115 F.Supp.2d 358, 363 (S.D.N.Y.2000) (government entity loses separate juridical status when it is alter ego or agent of parent government). However, in this case there have been no allegations that the Central Bank is an alter ego of the Ministry.

sufficiently allege exception to foreign sovereign immunity, thus discovery is not permitted).

When the defense of foreign sovereign immunity is raised, the only type of discovery sanctioned by courts has been jurisdictional discovery to determine whether or not a party is immune. *See, e.g., First City,* 150 F.3d at 176–77; *Foremost–McKesson, Inc. v. The Islamic Republic of Iran,* 905 F.2d 438, 449, 453 (D.C.Cir. 1990); *Gabay,* 151 F.R.D. at 257. Thus, once a party is found to be immune under the FSIA, it is immune from discovery regarding its assets as well as discovery regarding its transactions with other entities. As the Central Bank is immune from Olympic Chartering's discovery demands, I recommend that the motion to compel discovery be denied and the motion to quash the subpoena be granted.[6]

### 3. *Motion to Attach Assets of the Ministry*

28 U.S.C. § 1610 provides exceptions to immunity from attachment or execution. Section 1610(c) states that the property of a foreign sovereign which is not protected by immunity may not be attached without a court order. Before issuing an order, the court must determine that a reasonable period of time has elapsed following the entry of judgment, or in the case of a default judgment, from the time notice of the judgment was given to the foreign state under § 1608(e). 28 U.S.C. § 1610(c); *see Trans Commodities, Inc. v. Kazakstan Trading House, S.A.,* No. 96 Civ. 9782, 1997 WL 811474, at *3 (S.D.N.Y. May 28, 1997); *Ferrostaal Metals Corp. v. S.S. Lash Pacifico,* 652 F.Supp. 420, 423 (S.D.N.Y.1987) (citing H.R.Rep. No. 94–1487, at 30 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6629). This rule reflects the presumption of immunity for the property of foreign states and assures court review prior to the execution of judgments. *Trans Commodities, Inc.,* 1997 WL 811474, at *3.

Olympic Chartering filed a motion pursuant to § 1610(c) requesting permission "to attach and execute against the assets of the Respondent/Judgment Debtor, MINISTRY OF INDUSTRY AND TRADE of JORDAN f/k/a MINISTRY OF SUPPLY OF JORDAN, wherever the same may be located, which are beneficially owned by the Petitioner." (Motion Pursuant to § 1610(c) dated March 13, 2000). However, this motion does not specifically indicate which funds the plaintiff seeks to attach. In *Trans Commodities, Inc.,* the state court had issued a court order authorizing the plaintiff to attach "any assets of Defendants as may be necessary to enforce the Judgment." *Trans Commodities, Inc.,* 1997 WL 811474, at *1. The federal court found this order defective under the FSIA since no court had specifically passed upon the propriety of the restraining notice or the attachment of the property at issue in the case. *Id.,* at *3. Likewise, since the plaintiff in the instant case has not identified any specific assets in its motion, the Court cannot adequately review the propriety of attaching the assets of the judgment-debtor. Hence, I recommend that the motion to attach the assets of the Ministry be denied.

*Conclusion*

For the reasons set forth above, I recommend that the Central Bank's motion to intervene, motion to quash the writ of execution, and the motion to quash the subpoena be granted, and that Olympic Chartering's motion to attach and execute against assets of the Ministry be denied. Pursuant to Rule 72 of the Federal Rules

---

**6.** This recommendation would not prevent Olympic Chartering from redrafting a subpoe-na to seek information regarding the Ministry's assets at Arab Bank.

of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kimba M. Wood, Room 1610, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.

Aug. 2, 2000.