Norman GABAY,

v.

**MOSTAZAFAN FOUNDATION OF IRAN a/k/a The Foundation for the Oppressed, an agency or instrumentality of the Government of the Islamic Republic of Iran, and Mostazafan Foundation of New York, as alter ego of Mostazafan Foundation of Iran, Defendants.**

**No. 92 Civ. 6954(SHS).**

United States District Court, S.D. New York.

June 5, 1997.

Authur W. Rovine, Baker & McKenzie, New York City, for Plaintiff.

Bruno Alexander Ristau, Law Offices of Bruno A. Ristau, Washington, DC, for Defendant.

## OPINION AND ORDER

STEIN, District Judge.

Defendants move separately to dismiss the complaint in this action, arguing that (1) the court lacks subject matter jurisdiction over plaintiff's claims; (2) the court lacks personal jurisdiction over the Mostazafan Foundation of Iran; (3) plaintiff's claims are time-barred; (4) the complaint fails to state a cause of action on which relief may be granted; and (5) summary judgment should be granted because there is no genuine issue as to any material fact.[1] Because the Court finds that there is no subject matter jurisdiction over plaintiff's claims, defendants' motions are granted and the action is dismissed.

### I. Factual Background

Plaintiff Norman Gabay initiated this action on September 22, 1992, to recover damages for the expropriation by the Government of the Islamic Republic of Iran of several business establishments in Iran. (Compl. ¶ 1.) Defendants are the Mostazafan Foundation of Iran (the "Iran Foundation")—an entity established and existing under the laws of Iran—and the Mostazafan Foundation of New York, a not-for-profit foundation established in 1973 pursuant to the laws of New York as the Pahlavi Foundation, and currently known as the Alavi Foundation (the "New York Foundation"). (Id.; Mirza Aft. ¶ 10.)

Gabay is a native of Iran who, prior to 1979, established a carpet and textile business there. (Compl. ¶¶ 11, 12.) He emigrated to the United States in 1971 and became a naturalized American citizen in 1980. (Id. ¶¶ 13, 14.) In the United States, Gabay founded the Charles Company, an enterprise that manufactured plastics, imported Persian rugs, and exported raw material and machinery to one of his Iranian companies. (Id. ¶ 13.) Until 1979, Gabay traveled to Iran regularly to supervise the operations of his Iranian businesses. Following the Islamic revolution in 1979, Gabay stopped traveling to Iran, but continued to supervise his businesses there through local managers and from the offices of the Charles Company in this country. (Id. ¶¶ 15, 16.)

Gabay claims that sometime during the period of 1981–1983 the Iran Foundation expropriated all his properties in Iran. (Id. ¶ 19.) He further claims that the taking violated international law because (1) he was not compensated, and (2) the property was seized because he is Jewish. (Id.)

Gabay contends that this Court has subject matter jurisdiction over this dispute pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–11. He claims that the Iran Foundation is an agency or instrumentality of Iran within the meaning of § 1603(a) of the FSIA (Compl. ¶ 5); that the Iran Foundation acted as the expropriating agency in Iran (id. ¶ 10); that the New York Foundation is a mere "alter ego" of the Iran Foundation (id. ¶¶ 6, 23) and engages in "commercial activity" in this district (id. ¶¶ 28, 30); and that because of the

---

1. The Mostazafan Foundation of Iran moves to dismiss the complaint on the grounds that the court lacks subject matter and personal jurisdiction, that plaintiff's action is time-barred and, in the alternative, for summary judgment. The Alavi Foundation moves for summary judgment dismissing the complaint on the grounds that the court lacks subject matter jurisdiction, plaintiff cannot make out a prima facie case against it, and plaintiff's claims are time-barred. Because the defendants' arguments substantially overlap, this Opinion and Order treats them together unless otherwise noted.

alter ego relationship, the Iran Foundation itself must be regarded as engaging in commercial activity in New York. (*Id.* ¶ 5.) Thus, Gabay contends that because the Iran Foundation owns the expropriated properties in Iran and engages in business in New York, it is subject to suit for the wrongful taking of his properties in Iran pursuant to the "expropriation" exception to foreign sovereign immunity, 28 U.S.C. § 1605(a)(3). (Compl.¶¶ 2, 10.)

## II. *Procedural History*

On December 29, 1981, Gabay filed suit against the Government of Iran in the U.S. District Court for the Central District of California, seeking compensation for the expropriation of his property in Iran. (Loomba Decl. ¶ 9.) *See Bernard G. Martin. a pseudonym v. Government of Iran, et al.,* No. 81 Civ. 6501 (C.D.Cal. Dec. 22, 1981). That action was dismissed by the court without prejudice in February 1982, following the issuance by President Reagan of Executive Order No. 12294, 46 Fed.Reg. 14,111 (Feb. 24, 1981), 31 C.F.R. § 535.222 (1997), which implemented the Algiers Accords between Iran and the United States. (Loomba Decl., Exh. 10.) The Accords, which came into force on January 19, 1981, required, *inter alia,* that all then-existing claims by U.S. nationals against Iran (or its organs or agencies) be asserted before a specialized international tribunal established under the Accords—the Iran–U.S. Claims Tribunal at The Hague, The Netherlands—and that all suits against Iran in U.S. domestic courts be terminated. The Tribunal was competent to hear, among other controversies, claims by U.S. nationals against Iran and its agencies and organs for the taking of property, if such taking occurred prior to January 19, 1981.

In January 1982, Gabay filed a claim before the Tribunal against Iran for compensation for the taking of his property. (Compl.¶ 7.) The Tribunal ruled-almost a decade later-that Gabay had failed to establish that the claimed expropriation occurred at a time within the Tribunal's jurisdiction. On July 10, 1991, the Tribunal therefore issued a "final award" dismissing Gabay's claim for lack of jurisdiction. (*See* Rovine Aff., Exh. 6.) One month later, Gabay filed an application with the Tribunal requesting an "interpretation" of the award, which the Tribunal denied, writing that it could not "identify any ambiguous language in the Award." (*See id.,* Exh. 7.) This suit followed.

On October 15, 1993, Judge Kimba M. Wood of this court denied motions by the Iran Foundation and the New York Foundation to dismiss the complaint without prejudice to their renewal, and allowed Gabay to engage in limited discovery regarding the relationship between the two foundations. The court held that if Gabay could establish an alter ego relationship between the Alavi Foundation and the Iran Foundation, he would meet the requirements for invoking the FSIA's "international taking" exception to foreign sovereign immunity, § 1605(a)(3).[2]

---

2. Gabay claims jurisdiction pursuant to both 28 U.S.C. § 1602 and 28 U.S.C. § 1332, averring that there is complete diversity among the parties. Jurisdiction pursuant to 28 U.S.C. § 1332, however, can only lie in this Court pursuant to section (2) of that statute, which provides that the courts of the United States shall have original jurisdiction over any civil action between the "citizens of a State and *citizens or subjects* of a foreign state" (emphasis added). The statute does not allow for jurisdiction against a defendant foreign state or its agency or instrumentality. Gabay therefore appears to argue that the Mostazafan Foundation of Iran is an instrument of the Iranian government for purposes of his claim of jurisdiction pursuant to the FSIA, but that the Iran Foundation *is not* an instrument of the Iranian government (that is, it is nothing more than a private foundation incorporated in Iran) for purposes of diversity jurisdiction. In colloquial terms, Gabay thus seeks to have his cake and eat it too. The Mostazafan Foundation of Iran further complicates the jurisdictional issue by averting most strongly that it "is not a part of the Government of Iran ... and ... its employees are not civil servants and are not paid by the government." (Br. of Iran Foundation at 11.)

The Court finds that it does not have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Iran Foundation is an agency or instrument of the Iranian government. This conclusion rests on several grounds. First, the complaint alleges that "[t]he Mostazafan Foundation of Iran is an agency or instrumentality of the Government of the Republic of Iran," (Compl.¶ 5), which indicates plaintiff's own belief that the Court's jurisdiction depends upon the FSIA, not the diverse citizenship of the parties. Second, Judge Wood viewed it as "undisputed that the Iranian Foundation is an agency or instrumentality of the Iranian government within

After a long period of discovery, marked by numerous disputes among the parties, the defendants have renewed their dispositive motions.

## III. *Discussion*

■ In her October 15, 1993 opinion, Judge Wood presented a lengthy and thorough analysis of the FSIA, which, in her words, "sets forth 'the sole basis' for obtaining subject matter jurisdiction over foreign states and their agencies and instrumentalities in the federal courts." *Gabay v. Mostazafan Foundation of Iran, et. al,* 151 F.R.D. at 252 (quoting *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 434, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989); *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983)). Judge Wood outlined the purpose of the statute and the exception to foreign sovereign immunity that plaintiff seeks to apply in this case, § 1605(a)(3), which is known as the "expropriation exception." As noted above, she dismissed the defendants' dispositive motions without prejudice and ordered the parties to conduct limited discovery on the issue of "whether the Iranian foundation exercised control over the day-to-day activities of the New York Foundation." *Id.* at 257. The parties having completed that discovery and having renewed their motions to this Court, that question remains the pivotal issue for resolution.

Gabay argues initially that Judge Wood's reliance on *First National City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) ("*Bancec*"), was misplaced. In *Bancec,* the U.S. Supreme Court held that agencies and instrumentalities of foreign states are entitled to a presumption of independent status from the foreign state, *id.* at 627, 633, 103 S.Ct. at 2600, 2603, but that the presumption may be overcome where "internationally recognized equitable principles" require disregarding the corporate form in order to avoid injustice. The Court suggested two situations in which the presumption of separateness might be overcome: (1) where "a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," and (2) where recognition of the independent status of the agency or instrumentality would "work fraud or injustice." *Id.* at 629, 103 S.Ct. at 2601.

In interpreting *Bancec,* Judge Wood noted that the "alter ego" question in that case arose in the context of substantive liability, but that "lower courts have applied *Bancec's* analysis to issues of FSIA jurisdiction as well." *Gabay v. Mostazafan Foundation of Iran, et al.,* 151 F.R.D. at 253 (citing cases). "Under *Bancec* and its progeny," she wrote, "plaintiff has the burden of overcoming the presumption of independence on the part of defendant foundations." *Id.*

Gabay asserts that the presumption of separateness recognized by the Supreme Court in *Bancec* applies only to the relationship between a foreign state and an instrumentality or agency of that state. He argues that the presumption was recognized in that particular situation out of consideration for the political and economic importance of the government agency as an instrument for development. (Br. at 16.) This case, he asserts, is different in that the relationship between a state and an instrumentality of that state is not at issue; instead this Court must examine the relationship between an instrumentality of a state—the Iran Foundation-and its

the meaning of the FSIA." *Gabay v. Mostazafan Foundation of Iran,* 151 F.R.D. 250, 252 (S.D.N.Y.1993). Further, Judge Wood's grant of discovery to the parties was limited to defining the parameters of the relationship between the Mostazafan Foundation of Iran and the Alavi Foundation, a determination necessary only to establish jurisdiction pursuant to the FSIA. Finally, this Court is independently persuaded that the Foundation should be considered an agency or instrumentality of the government of Iran, because "it was created by order of the Ayatollah Khomeini, leader of the revolutionary govern-

ment of the Islamic Republic of Iran, to centralize, take possession of, and manage property expropriated by the revolutionary government." *Id.* at 251; *see* Rovine Aft., Exh. 11; *see also Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 441 (D.C.Cir.1990); *Protiva v. The Government of the Islamic Republic of Iran,* Case No. 316, Chamber Two, Award No. 566–316–2, at ¶ 70 (July 14, 1995). Accordingly, diversity jurisdiction is improper in this case, leaving plaintiff's only jurisdictional recourse in the FSIA.

alleged agent or alter ego—the New York Foundation.

Even if Judge Wood's analysis were not the law of the case, *See Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir.1964); *North River Ins. Co. v. Philadelphia Reinsurance Corp.,* 63 F.3d 160, 164–65 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1289, 134 L.Ed.2d 233 (1996); *NLRB v. Coca–Cola Bottling Co.,* 55 F.3d 74, 77–78 (2d Cir.1995); *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992), this Court would adhere to it. No cause has been shown to abandon Judge Wood's determination that the pivotal issue is whether the Iranian Foundation exercised control over the day-to-day activities of the New York Foundation, nor has plaintiff pointed to any intervening law that undermines that ruling. The key issue in *Bancec* was whether an American corporation, sued by an instrumentality of Cuba in the United States, could subject that instrumentality to suit through its counterclaim. The Supreme Court rejected state law as governing the issue, remarking on the importance Congress attached to a "'uniform body of law' concerning the amenability of a foreign sovereign to suit in United States courts." *Bancec,* 462 U.S. at 622 n. 11, 103 S.Ct. at 2598 n. 11; *see also Barkanic v. General Admin. of Civil Aviation,* 923 F.2d 957, 959–60 n. 2 (2d Cir. 1991). The same considerations apply in this case and require that the jurisdictional determination facing this Court be made utilizing the standards set forth in *Bancec. See Gabay v. Mostazafan Foundation of Iran, et. al.,* 151 F.R.D. at 254.

The Court now considers whether Gabay has overcome the presumption of independence that rests on the defendant foundations by showing that the Iran Foundation has exercised control over the day-to-day activities of the New York Foundation. Although the parties dispute the time period within which the character of the relationship between the two foundations should be examined for purposes of determining whether the Court has subject matter jurisdiction pursu-

ant to § 1605(a)(3),[3] the Court finds that the Iran Foundation did not exercise day-to-day control over the New York Foundation during either of the relevant periods. Similarly, the Court will not address the admissibility of the evidence Gabay has amassed in his attempt to prove the Iran Foundation's day-to-day control, since even if all of the evidence were admissible, the Court finds that Gabay has not shown such control.

Simply put, the facts developed by Gabay do not show that the Iran Foundation exercised control over the day-to-day activities of the New York Foundation, and thus the Court does not have subject matter jurisdiction over this action. Gabay alleges the following:

(1) that one of the central purposes of the Iran Foundation, as expressed in its Official Charter, was to control the properties of the Dynasty of the Shah of Iran, which allegedly included the assets of the Pahlavi Foundation of New York. Gabay alleges that the Iran Foundation therefore took over the membership of the New York Foundation's Board of Directors. He asks the Court to draw a negative inference from the change in the Board of Directors in 1979, claiming that by the end of 1979, no director of the Pahlavi Foundation that served prior to the Iranian Revolution remained on the Board. The New York Foundation has shown, however, that there were legitimate reasons for the changes that occurred in the membership of the Board. For example, William Rogers stated, in both a resignation letter and in deposition testimony, that his initial agreement to serve only until the Pahlavi Foundation began to produce income and the Foundation's subsequent achievement of that goal constituted his reason for retiring from the Board. (Loomba Decl., Exh. 6 at 1–2; Winter Reply Aff., Exh. 3 at 13.) Similarly, Dr. Houshang Ahmadi indicated in deposition testimony that he went to his first meeting of the Board at the invitation of Mr. Manoucher Shafie, the president of

---

**3.** Plaintiff claims that this Court must consider the time when his property was expropriated in making its jurisdictional determination, that is, between November 1980 and May 1983. (Br. at

15.) The New York Foundation claims, however, that the proper time frame is the time of the filing of the complaint. (Reply Br. of New York Foundation at 21–22.)

the New York Foundation at the time, and mentioned nothing to indicate his decision was influenced by a third party. (Winter Reply Aff., Exh. 4 at 17–18.)

(2) that the Iran Foundation was responsible for the change of the New York Foundation's name in 1980 from the "Pahlavi Foundation" to the "Mostazafan Foundation of New York." However, the only evidence in the record regarding the change in name presents legitimate reasons for the change, specifically that the change in name was made at the request of Mr. Shafie, who suggested that as the term meant "helping the needy people," it would fit the purpose of the Foundation. (Winter Reply Aff., Exh. 4 at 42–43.) Mr. Shafie himself testified that he suggested the change because the name "Pahlavi Foundation" had become controversial. (Winter Reply Aff., Exh. 2 at 70–74.)

(3) that certain issues of the newsletter entitled the Bonyad Local Publication demonstrate the Iran Foundation's takeover and control of the New York Foundation. Those issues do exhibit similarities between the New York Foundation's activities and the activities listed in the newsletters as the Iran Foundation's goals for the New York Foundation. The existence of these similarities, however, does not show a causal connection between the listing of the goals in the newsletters and the actual activities of the New York Foundation.

(4) that documents of the IRS demonstrate a day-to-day control relationship between the foundations. However, the U.S. government has always considered the New York Foundation to be a separate and distinct entity from the Iran Foundation and the documents indicate speculation, at best, that there was a relationship between the Government of Iran (as opposed to the Iran Foundation) and the New York Foundation.

In sum, Gabay has put forth insufficient evidence of day-to-day control between the foundations to establish subject matter juris-

diction within the purview of the FSIA. This Court therefore does not have subject matter jurisdiction over this action.[4]

### IV. *Conclusion*

For the foregoing reasons, the motion of the Iran Foundation to dismiss or, in the alternative, for summary judgment, and the motion of the New York Foundation for summary judgment are granted. Accordingly, the complaint in this action is hereby dismissed.

SO ORDERED.

---

4.  Gabay also challenges Judge Wood's determination that this Court cannot exercise jurisdiction pursuant to § 1605(a)(2) of the FSIA, which is known as the "commercial activity exception." *See* 151 F.R.D. at 255 n. 8. Judge Wood's analysis of that exception is thorough and well-reasoned, and no further discussion is necessary on the issue.