**Stephen M. FLATOW Plaintiff,**

v.

**THE ISLAMIC REPUBLIC OF IRAN, et al., Defendants.**

No. Civ.A. AW–98–4152,
No. Misc. 98–285.

United States District Court,
D. Maryland.

Sept. 7, 1999.

Thomas F. Fay and Steven R. Perles, Washington, DC, for plaintiff Stephen M. Flatow.

Patrick J. Attridge, Rockville, MD, John D. Winter, New York City, for movant the Alavi Foundation.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

### I

Currently pending before the Court are Movant Alavi Foundation's Motions to Release Properties From Levy, to Quash Writs of Execution, and to Enjoin Plaintiff from Issuing Future Writs Against the Foundation's Property. A hearing was held on these motions. In ruling on the motions, the Court has considered the briefs of the parties, the arguments of counsel at the hearing in open court, and the entire record. For the reasons that will follow, the Court will grant the motions.

### II

Plaintiff, Stephen M. Flatow, has initiated numerous proceedings to attach and execute a judgment against the assets of the Islamic Republic of Iran ("Iranian Government") pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C.A. Section 1610(a)(7) and (f) (West Supp.1999) ("FSIA"). This judgment was entered in the United States District Court for the District of Columbia and was registered in this District on July 16, 1998.

Plaintiff's daughter, Alisa Flatow, was killed on April 9, 1995 in the Gaza Strip when a terrorist bomb exploded. On April 24, 1996, Congress enacted amendments to the FSIA as part of the Antiterrorism and Effective Death Penalty Act, which granted subject matter jurisdiction over a claim brought against a foreign state:

> for personal injury or death that caused by an act or torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources ... for such an act if such act or provision of material support is engaged in by an official, employee or agent of such foreign state while acting within the scope of his or her office, employment, or agency ...

Pub.L. No. 104–132, § 221, 110 Stat. 1214. (codified at 28 U.S.C. § 1605(a)(7)). Relying on these amendments, Plaintiff filed a Complaint for wrongful death and other related causes of action against the Iranian Government, the Iranian Ministry of Information and Security, Ayatollah Ali Hoseini Khamenei, then-President Ali Akbar Hashemi–Rafsanjani, and then-Intelligence Minister Ali Fallahian Khuzestani. On March 3, 1998, Plaintiff obtained a default judgment against the Defendants, and United States District Judge Royce C. Lamberth entered judgment in favor of the Plaintiff in an amount exceeding $247,-000,000.[1]

Plaintiff then began to initiate enforcement proceedings throughout the country against assets that he claims are owned by the Iranian Government. The instant proceeding includes property located at (1) 8100 Jeb Stuart Road, Rockville, Montgomery County, Md. 20854, (2) 7917 Montrose Road, Rockville, Montgomery County, Md. 20850 and (3) 12010 Seven Locks Road, Potomac, Montgomery County, Md. 20854.[2] Plaintiff served writs of execution

---

1. For a more detailed discussion of the factual background in the underlying case, *see Flatow v. Islamic Republic of Iran, et. al*, 999 F.Supp. 1 (D.D.C.1998).

2. In the Montgomery County tax records, the parcels located at 12010 Seven Locks Road and 7917 Montrose Road are combined as one property.

upon these properties on November 9, 1998.

The Movant, the Alavi Foundation ("Foundation"), which was not named as a party to the underlying litigation, is the owner of record of these properties. The Foundation now moves pursuant to Md. Rule 2–643 (1999) to release the property in question from the levy, to quash the writs of execution issued on the property, and to enjoin the Plaintiff from issuing future writs against the Foundation's property.

## III

■ Under Maryland law, as a general rule, a judgment creditor may not levy against a third-party's property in order to satisfy a money judgment against a judgment debtor. *See Eastern Shore Bldg. & Loan Corp. v. Bank of Somerset*, 253 Md. 525, 253 A.2d 367, 369 (1969) ("[T]he lien of the judgment only attaches to the interest in land owned or held by the judgment debtor, himself, and is subject to the limitations, legal or equitable, to which that interest is subject at the time of the entry of the judgment.") In order to levy against a third-party's property, the judgment creditor must prove that the property of a third-party can be seized because: (1) the third-party is an agent, alter ego, or instrumentality of the judgment debtor; (2) the third-party is a garnishee of the judgment debtor; or (3) there was a conveyance of property between the judgment debtor and the third-party which was motivated by the intent to defrauding creditors. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) (*"Bancec"*); *Parkville Fed. Sav. Bank v. Maryland Nat'l Bank*, 343 Md. 412, 681 A.2d 521 (1996); *Frain v. Perry*, 92 Md.App. 605, 609 A.2d 379 (Md.1992). Plaintiff, the judgment creditor in this case, cannot meet any of these narrowly

defined bases for levying a third-party's property:[3]

■ Plaintiff maintains that the property of the Foundation may be levied because the Foundation "and its assets are property in the United States of [the Iranian Government] and the [FSIA] authorizes the execution against certain assets of foreign state sponsors of terrorism, including those at issue in this proceeding, in order to satisfy judgments for which they are not immune from suit under 28 U.S.C. § 1605(a)(7)." Memorandum in Opposition at 9.

However, the Alavi Foundation is a nonprofit foundation, which was duly organized under the NotForProfit Corporation Law of New York State. As such, it is a citizen of the State of New York. *See* 28 U.S.C. § 1332(c)(1) (1994) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated. . . ."). Section 1603(b) of the FSIA, the law that governs the underlying case, provides that an " 'agency or instrumentality of a foreign state' means any entity . . . which is neither a citizen of a State of the United states as defined in section 1332(c) . . . of this title . . ." 28 U.S.C. § 1603(b)(3) (1994). Therefore, pursuant to the FSIA, the Foundation by definition cannot be an agent, alter ego, or instrumentality of the Iranian Government.

■ Even if the Foundation was not a citizen of the State of New York, pursuant to the FSIA, a separately incorporated entity is entitled to a presumption of independence from a foreign sovereign. *See Banco*, 462 U.S. at 629, 103 S.Ct. 2591. In order to overcome this presumption of independence, Plaintiff must show either that the Foundation is "so extensively controlled by" the Iranian Government "that a relationship of principal and agent is created" or that regarding the Foundation as a separate instrumentality would " 'work fraud or injustice' " against him. *Id.*

---

**3.** Plaintiff has not fully addressed the latter two exceptions, but relies on his position that

the Foundation is a "front" for the Iranian Government.

■ The case law in this area generally holds that a principal-agent relationship has been created for the purposes of the FSIA when the foreign sovereign exercises day-to-day control over its activities. *See McKesson Corp. v. Islamic Republic of Iran,* 52 F.3d 346, 351–52 (D.C.Cir.1995); *see also Hester Int'l Corp. v. Federal Republic of Nigeria,* 879 F.2d 170, 178–80 (5th Cir.1989) (holding that an entity in which Nigeria held 100% of its stock was not an agent because there was no showing of day-to-day control); *Baglab Ltd. v. Johnson Matthey Bankers Ltd.,* 665 F.Supp. 289, 297 (S.D.N.Y.1987) (holding that the plaintiff failed to overcome the presumption of separateness because it failed to prove that the Bank of England exercised "general control over the day-to-day activities" of an entity so that the entity could be deemed an agent). Plaintiff concedes that this is the general rule, but argues that the Court should apply a more lenient rule in the instant case. Plaintiff argues that the "courts have developed that standard under the rubric of a different provision of the FSIA—the commercial activities exception to foreign sovereign immunity—the history and purpose of which are not comparable to 28 U.S.C. § 1605(a)(7)." Memorandum in Opposition at 12.

Plaintiff contends that the purpose of the commercial activities exception is to facilitate "legitimate commercial intercourse by and among the community of nations," and to allow foreign governments the same type of access to the advantages of the corporate form that a private person would have. *Id.* at 14. According to Plaintiff, 28 U.S.C. Section 1605(a)(7) was "designed to prevent foreign state sponsors of terrorism from enjoying surreptitious participation in the American marketplace and legal system, the benefits of which could eventually be turned against American interests." Memorandum in Opposition at 15. Plaintiff argues that cases arising under this exception should be treated differently than those cases which arise out of commercial disputes. Plaintiff states that:

> Rather than perpetuate a safe harbor for outlaws, which would be the result of a "day-to-day control" test, American courts should permit enforcement of 28 U.S.C. § 1605(a)(7) judgments against non-parties to the underlying litigation when there is evidence that a judgment debtor owns covert property interests in the United States which have been sheltered in an outwardly independent third party.

Memorandum in Opposition at 18.

■ The Court is not persuaded that Plaintiff's more lenient standard, which would find that an entity is an instrumentality if there is proof that the foreign sovereign has any interest in that entity, is applicable. "Congress is presumed to enact legislation with knowledge of the law, that is with the knowledge of the interpretation that courts have given the statute." *United States v. Langley,* 62 F.3d 602, 605 (4th Cir.1995). There is nothing in the language of the provision itself, or the legislative history that indicates that Congress intended 28 U.S.C. Section 1605(a)(7) to be interpreted differently than the other provisions of the statute. *See* H.R. Conf. Rep. No. 104–518, *reprinted in* 1996 U.S.C.C.A.N. 924. "[A]bsent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." *Langley,* 62 F.3d at 605. Therefore, the Court finds that the day-to-day control rule is applicable[4] to Section 1605(a)(7) as well.[5]

4. As the Court has found that the day-to-day control test applies, it need not address Movant's argument that applying the lesser standard would violate the Fifth Amendment to the Constitution.

5. It should be noted that the Eleventh Circuit recently applied the day-to-day control test in a case that was brought under 28 U.S.C. § 1605(a)(7). *See Alejandre v. Telefonica Larga Distancia De Puerto Rico, Inc.,* (11th Cir. 1999).

■ Plaintiff has the burden of proving that the Foundation is not entitled to separate recognition. *See De Letelier v. Republic of Chile,* 748 F.2d 790, 795 (citing *Palmiter v. Action, Inc.,* 548 F.Supp. 1166, 1172 (N.D.Ind.1982)) ("A creditor seeking execution against an apparently separate entity must prove 'the property to be attached is subject to execution.' "). Most of the evidence that Plaintiff produced in this case to establish that the Iranian Government exercises control over the Foundation was presented in *Gabay v. Mostazafan Foundation of Iran,* 968 F.Supp. 895 (S.D.N.Y.1997), *aff'd* 152 F.3d 918 (2d Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 591, 142 L.Ed.2d 534 (1998). This Court finds, as the *Gabay* court found, that this evidence does not establish that the Iranian Government exercised such control.

Plaintiff claims that the Foundation was originally established as the Pahlavi Foundation of New York in 1973 by Shah Mohammed Reza Pahlavi as a branch of the Pahlavi Foundation, an Iranian nonprofit charitable organization founded in 1958. Plaintiff further claims that the fact that the Iranian Government controlled, and continues to control the Foundation is demonstrated by the changes in the name of the Foundation, which, in Plaintiff's view, coincided with political changes in Iran. Plaintiff notes that in March of 1979, following the Islamic Revolution in which Ayatollah Khomeini assumed power over the country, the Mostazafan Foundation of Iran was created. Plaintiff asserts that the Mostazafan Foundation of Iran then took control of the Pahlavi Foundation of Iran. Plaintiff claims that the fact that the Iranian Government confiscated the Pahlavi Foundation of New York, as well, is demonstrated by the fact that there was a turnover of the Foundation's Board of Directors, and a change of the name from Pahlavi Foundation of New York to Mostazafan Foundation of New York. Plaintiff states that the evidence "strongly suggest[s] that [the Foundation] is a *de facto* instrumentality of the Islamic Republic of Iran." Memorandum in Opposition at 20. Moreover, Plaintiff asserts that the Foundation has been used by the Iranian Government as part of its "ongoing fraudulent scheme to disguise its participation in the United States legal system and avoid its obligations under United States laws, in flagrant abuse of the corporate form." Memorandum in Opposition at 28.

The Alavi Foundation has shown that there were legitimate reasons for the changes in composition of the Board in 1979. Former Secretary of State William Rogers stated, in both his resignation letter and in deposition testimony in the *Gabay* case, that he had agreed to serve as a Board member "only until the Pahlavi Foundation began to produce income and the Foundation's subsequent achievement of that goal constituted his reason for retiring from the Board." *Gabay,* 968 F.Supp. at 899. Further, Dr. Houshang Ahmadi testified in the *Gabay* case that he became a Board member at the invitation of the president of the Foundation at the time, Manoucher Shafie ("Shafic"), and that his decision to become a member was not influenced by a third party. *See id.* at 900. Therefore, the Court cannot find that the Iranian Government exercised control of the change in the composition of the Foundation's Board.

Movant has also provided a legitimate reason for the changes in the name of the Foundation. Shafie testified in *Gabay* that the name change from Pahlavi to Mostazafan was his idea because the name Pahlavi had become controversial, and the name Mostazafan, which means "helping needy people" fit the Foundation's purpose. *Id.* Moreover, the name changes were subject to regulatory and judicial approval under New York law. Therefore, the fact that the name changes coincided with changes in the name of the foundation in Iran is not proof of day-to-day control of the Foundation by the Iranian Government.

Plaintiff has also produced certain issues of a newsletter entitled the Bonyad Local

Publication, which he claims demonstrates that the Foundation was controlled by the Mostazafan Foundation of Iran, and thus the Iranian Government. Although the newspapers do demonstrate some similarities between the activities of the Alavi Foundation and the activities alleged to be the goals of the Iranian Government for the Foundation, the existence of these similarities "does not show a causal connection between the listing of the goals in the newsletters and the actual activities" of the Foundation. *Gabay*, 968 F.Supp. at 900. Moreover, in *Hester Int'l Corp.*, the court also was provided with documents, which were not authored by the Nigerian Government itself, which proclaimed that the entity involved was the representative of Nigeria. 879 F.2d at 179–80. In that case, the court found that the entity, a corporation that was created and owned by the Nigerian Government, could not be considered a mere alter ego or agent of the government in spite of these documents. *Id.* The Court similarly finds that the newsletters in the present case are not proof of day-to-day control.

Plaintiff has also produced documents from the Internal Revenue Service ("IRS"), which he claims indicates that the Iranian Government exercises control over the Foundation. The record shows that after ten years of debate over the subject, the IRS changed its position about whether a loan the Foundation received from a bank affiliated with the Iranian Government was deductible. The IRS had maintained that the loan was not deductible because the parties to it were not dealing at "arms-length." The Foundation asserted, as it does here, that it was independent of the Iranian Government, and thus the loan should be deductible. In 1997, the IRS gave the Foundation a substantial refund. Therefore, the documents produced by Plaintiff do not establish that the Foundation was subject to day-to-day control by the Iranian Government.

In addition to the evidence that was provided in *Gabay*, Plaintiff has also provided sworn statements from Dr. Patrick L. Clawson ("Clawson"), the Director for Research at the Washington Institute for NearEast Policy, and Kenneth R. Timmerman ("Timmerman"), a journalist to support his theory that the Foundation is controlled by the Iranian Government. Plaintiff states that if the Court held an evidentiary hearing in this matter, he is prepared to present these witnesses and at least a dozen others that would testify about a connection between the Foundation and the Iranian Government.

However, after reviewing the statements of Dr. Clawson and Mr. Timmerman, the Court does not believe that an evidentiary hearing is necessary. The Timmerman report is replete with allegations connecting the Foundation with terrorism. However, it is based upon the newsletters, anonymous interviews, and confidential informants, and generally lacks the reliability and "equivalent circumstantial guarantee of trustworthiness" to meet any of the hearsay exceptions. *See* Fed.R.Evid. 803(24). Dr. Clawson has expressed an opinion that the Foundation's activities "seem consistent with Iranian behavior." Memorandum in Opposition, Exhibit 12 at 9. He has stated that he "can't prove that's the same pattern, but I just simply say it's consistent." *Id.* As such, his opinion is based on speculation. "An expert's opinion should be excluded when it is based on assumptions which are speculative and are not based in the record." *Tyger Constr. Co., Inc. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994). The Court believes, and Plaintiff has not submitted any affidavits for the other witnesses to the contrary, that any testimony at the evidentiary hearing would be of the same ilk. Thus, Plaintiff is not entitled to an evidentiary hearing.

Finally, Plaintiff maintains that during a November 2, 1998 meeting, he and his counsel met with Under Secretary of State Stuart E. Eizenstat ("Secretary Eizenstat") and with representatives of the Departments of State, Treasury and Justice.

As a result of this meeting, the Plaintiff maintains that he received more than three thousand pages of documents related to the assets of the Iranian Government. Plaintiff notes that within these pages were numerous references to the Foundation and its assets. Plaintiff also asserts that members of the Secretary Eizenstat's staff[6] "expressly stated that the Alavi Foundation is an agency or instrumentality of the Islamic Republic of Iran controlled through the Mostazafan Foundation of Iran...." Memorandum in Opposition at 2. Plaintiff, however, has not provided an affidavit or any other documentary evidence to support the argument that the United States Government itself has taken the official stance that the Foundation is an instrumentality of the Iranian Government. The evidence in the record supports the position that the United States Government and the State of New York have always considered the Foundation to be a separate and distinct entity from the Iranian Government. Moreover, the IRS has determined the Foundation to be a charitable organization within the meaning of the Internal Revenue Code.

The evidence in the record supports a finding that the Iranian Government does not exercise day-to-day control over the Foundation. Movant maintains, and Plaintiff has not demonstrated to the contrary, that the Foundation has been in compliance with all federal and state registration and reporting requirements since its organization, including the required annual filings with the New York's Secretary of State. Further, Movant contends, and Plaintiff concedes, it scrupulously adheres to all corporate formalities. Movant has submitted proof by affidavit that the Directors are elected by the Foundation itself, and they have regular meetings. Further, the Foundation files its own tax returns, and is in good standing with the Attorney General of New York. Plaintiff

has not provided any proof that the Foundation is undercapitalized. Instead, Movant has submitted proof by affidavit that it is funded through the rental income that it receives from the interest it has in its building located in New York City. Moreover, the Foundation has its own bank accounts, and there is no proof of any commingling of funds between the Foundation and the Iranian Government, or any of its agents or instrumentalities. Movant has submitted proof by affidavit that it hires its own employees and that none of these employees are agents, officers, or employees of the Iranian Government as well. There is no evidence in the record that the Foundation shares any office space with any agent or instrumentality of the Iranian Government. Finally, Movant has submitted proof by affidavit that the Foundation has rejected requests for funding from entities affiliated with the Iranian Government. In light of these facts, the Iranian Government cannot be seen as exercising day-to-day control over the Foundation's activities.

 Furthermore, in order to be liable as an agent, alter ego, or instrumentality, the entity generally must have some connection with the underlying dispute. *See Hercaire Int'l Inc. v. Argentina*, 821 F.2d 559, 563 (11th Cir.1987) ("Having had no connection whatsoever with the underlying transaction which gives rises to Argentina's liability it would be manifestly unfair to subject [the entity's] assets to such attachment."); *Banco Nacional de Cuba v. Chemical Bank New York Trust Co.*, 782 F.2d 377, 378 (2d Cir.1986). Although Plaintiff again argues that this rule should not be applied to Section 1605(a)(7), for the reasons previously explained, the Court is not persuaded. Plaintiff has not established that the Foundation has any connection with the underlying case. Nor has the Plaintiff established that regarding the Foundation as a separate instrumentality

---

**6.** In his Supplemental Memorandum, Plaintiff asserted that it was the Secretary Eizenstat himself who made this comment.

would " 'work fraud or injustice' " against him. Therefore, the Foundation cannot be held liable for the judgment against the Iranian Government.[7]

## IV

 As Plaintiff cannot establish that the Foundation was an agent, alter ego, or instrumentality of the Iranian Government, has not proceeded by writ of garnishment, and has not argued that there was a conveyance between the Foundation and the Iranian Government that was made with the intent to defraud a judgment creditor[8], Plaintiff was not entitled to a levy on these properties. Therefore, the Court will release the properties from the levy, and quash the writs of execution against them. Further, pursuant to Md.Code Ann., Real Prop. § 14–108 (1998)[9], as a levy is a cloud on a property's title, the Foundation is entitled to an injunction against Plaintiff to prevent any future writs on the properties of the Foundation. Accordingly, the Court will grant the Movant's motions.

A separate Order consistent with this Opinion will follow.

## ORDER

In accordance with the Memorandum Opinion, it is this 7th day of September, 1999, hereby ORDERED:

7. As the Court has found that the Foundation is not an agent, alter ego, or instrumentality, the Court will not address Plaintiff's argument that the Foundation's assets are subject to attachment pursuant to 28 U.S.C. Section 1610(a)(7) and (f).

8. Even if Plaintiff had made this argument it would fail. The record shows that the properties were purchased by the Foundation itself and were never directly owned by the Iranian government. Furthermore, there is no proof that the Iranian Government is insolvent. Finally, the properties were purchased long before the facts giving rise to the underlying litigation occurred, and thus were not purchased with the intent to defraud the Iranian Government's creditors. *See Frain*, 92 Md. App. 605, 609 A.2d 379.

9. This section provides:

1. That Movant's Motion to Release Properties From Levy [17–1] BE, and the same hereby IS, **GRANTED;**

2. That Movant's Motions to Quash Writs of Execution [17–2] BE, and the same hereby IS, **GRANTED,**

3. That Movant's Motions to Enjoin Plaintiff from Issuing Future Writs Against the Alavi Foundation's Property [17–3] BE, and the same hereby IS, **GRANTED;**

4. That the following properties of the Alavi Foundation are hereby released from a levy: (1) 8100 Jeb Stuart Road, Rockville, Montgomery County, Md. 20854, (2) 7917 Montrose Road, Rockville, Montgomery County, Md. 20850 and (3) 12010 Seven Locks Road, Potomac, Montgomery County, Md. 20854;

5. That the Writs of Execution issued by this Court with respect to the property of the Alavi Foundation are hereby quashed;

6. That the Plaintiff is hereby enjoined from issuing future writs against the property of the Alavi Foundation;

7. That Plaintiff's Motion for Hearing [22–1] BE, and the same hereby IS, **DENIED as moot;**

Any person in actual peaceable possession of property, or, if the property is vacant and unoccupied, in constructive and peaceable possession of it, either under color of title or claim of right by reason of his or his predecessor's adverse possession for the statutory period, when his title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property, or any part of it, or to hold any lien encumbrance on it, regardless of whether or not the hostile outstanding claim is being actively asserted, and if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim, the person may maintain a suit in equity in the county where the property lies to quiet or remove any cloud from the title, or determine any adverse claim.

8. That the Clerk of the Court **CLOSE** these cases; and

9. That the Clerk of the Court mail copies of this order to all counsel of record.